

FILED

Jul 31 2017, 5:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Mark R. Smith
Donna H. Fisher
Smith Fisher Maas Howard &
Lloyd P.C.
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE
INSURANCE INSTITUTE OF INDIANA, INC.

Bryan H. Babb
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Michael J. Anderson
Scott M. Keller
Tracey S. Schafer
Anderson, Agostino & Keller, P.C.
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Erie Indemnity Company, as the Attorney-In-Fact for the Subscribers at Erie Insurance Exchange, | July 31, 2017 |
| *Appellant-Defendant/Counterclaimant*, | Court of Appeals Case No. 46A03-1606-CT-1261 |
| v. | Appeal from the LaPorte Superior Court |
| The Estate of Brian L. Harris, By Its Special Representative, Laura Harris, and Anna Marie Harris, Spouse of Brian L. Harris, Deceased, | The Honorable Richard R. Stalbrink, Jr., Judge |
| *Appellees-Plaintiffs/Counterdefendants*. | Trial Court Cause No. 46D02-1511-CT-2015 |

**Kirsch, Judge.**

[1] Erie Indemnity Company, as the Attorney-In-Fact for the Subscribers at Erie Insurance Exchange (together, "Erie"),[1] appeals the trial court's summary judgment decision in favor of the widow and estate of Brian L. Harris. On appeal, Erie raises the following restated issue: Whether the trial court erred as a matter of law by finding that the uninsured motorist insurance issued to Brian L. Harris's ("Brian") employer, as part of its commercial auto fleet policy that covered Brian's take-home car, provided coverage when Brian, while off duty and cutting his own lawn on a riding mower, was struck and killed by a car driven by an uninsured motorist.

[2] We affirm.

## Facts and Procedural History[2]

[3] On August 6, 2010, Brian was on a riding lawnmower, cutting grass at his Goshen, Indiana home, when, while close to the road, he was struck and killed by Noel M. Sparks ("Sparks"), who was driving a 1974 Chevy truck ("Chevy"). Sparks had borrowed the Chevy with the permission of its owners, Brent and Jamie Stouder (together, "the Stouders"). At the time of the accident, Sparks

---

[1] Because Erie Indemnity Company and Erie Insurance Exchange appear to be one entity for purposes of this appeal, a reference to Erie is a reference to either or both entities unless otherwise stated.

[2] We held oral argument on June 21, 2017 at Purdue University's Krannert School of Executive Management. We thank counsel for their preparation and argument, and we commend them on their outstanding advocacy. We also thank the students for their insightful questions and comments posed after, but not specifically related to, the oral argument.

was driving on a suspended license and was under the influence of illegal drugs. Because Sparks was operating the vehicle as an unlicensed driver, the Stouders' insurance on the Chevy did not apply to the accident; accordingly, Sparks was deemed to be an uninsured motorist.

[4] Brian, who was the husband of Anna Marie Harris ("Anna Marie"),[3] had worked since January 1993 for Formco Inc. ("Formco"), a plastic design and manufacturing company in Elkhart County. During his employment, Brian drove a company-owned vehicle as his primary transportation for both business and personal uses. In August 2010, Brian's vehicle was a 2004 Toyota pickup truck ("Toyota").[4]

[5] In December 1993, Formco submitted an application to Erie requesting Commercial Non-Fleet/Fleet Auto coverage. In Section 10 of that application, Formco was required to list: (1) the vehicles for which coverage was requested; and (2) each driver's name and license number exactly "as it appears on the driver's license." *Appellant's App. Vol. 2* at 139. Brian's name was submitted as one of only three named drivers in a policy that covered eleven vehicles. The other drivers listed were David Slagel, President of Formco, and Jean Woodworth, whose position was not provided. On December 11, 1993, Erie

---

[3] Both parties incorrectly refer to Brian's wife as "Anne Marie." It is clear from her own affidavit that Brian's wife is "Anna Marie." *Appellant's App. Vol. 3* at 162-63.

[4] In a sworn affidavit submitted to the trial court, Anna Marie stated that, during the time Brian used the Toyota for both business and personal transportation needs, he "did not own a vehicle which he regularly used for personal transportation." *Appellant's App. Vol. 3* at 163

issued a Commercial Auto Policy to Formco as the sole "Named Insured," designating the autos that were covered, but mentioning nothing about individual drivers.[5] That policy was renewed each year, and vehicles were added and deleted as needed. The policy that was in effect at the time of the accident was the sixteenth renewal ("the Policy") and covered the term from December 11, 2009 to December 11, 2010. The Policy included an Uninsured/Underinsured Motorist Coverage Endorsement – Indiana ("UM Endorsement"),[6] which supplied coverage limits of $1,000,000 per accident, and listed the Toyota as one of Formco's scheduled vehicles. Brian paid no premiums and was not a named insured under the Policy. Norman C. Flick, the Section Supervisor, Commercial Property and Casualty Underwriting, for the Commercial Lines and Reinsurance Division of Erie Insurance Exchange, submitted an affidavit, as designated evidence, stating, "Brian was not listed as a 'named insured' or an 'additional insured' in any of the renewals' Declarations Pages; nor was Brian's name listed anywhere in the renewals' Declarations Pages. Rather, Brian was identified in [Erie]'s underwriting

---

[5] Erie contends, "If Formco or Brian had ever asked Erie to add Brian to the Policy or renewals as a "named insured" or "additional insured," Erie would have declined such a request – Erie's underwriting guidelines do not permit it to add an employee such as Brian as a "named insured" or "additional insured" to a commercial auto policy issued to a named insured which is a corporation such as Formco." *Appellant's Br.* at 13 (citing *Appellant's App. Vol. 4* at 44).

[6] Because we are only concerned with the uninsured motorist coverage, we use the term "UM Endorsement."

records as a 'scheduled driver' under the Policy." *Appellant's App. Vol. 3* at 80; *Appellant's App. Vol. 4.* at 44.

[6] Following Brian's death, his estate submitted a claim to Erie seeking damages for bodily injury under the Policy's UM coverage. Erie denied that claim by letter dated September 6, 2010. In that denial letter, Erie asserted that UM coverage was unavailable because: (1) Brian did not meet the definition of a named insured "you," as defined in the Policy; and (2) Brian was not using or occupying an auto insured by the Policy at the time of the accident.

[7] Brian's estate and Anna Marie (together "the Estate") filed a Complaint for Damages and Declaratory Judgment in Elkhart Superior Court (Case No. 20D03-1107-CT-11) ("Complaint") on July 8, 2011.[7] The Complaint set forth the following counts: Count I alleged negligent operation of a motor vehicle by Sparks; Count II alleged negligent entrustment by the Stouders of their Chevy to Sparks; and Count III sought declaratory judgment to determine whether the Policy's UM insurance covered the damages that the Estate had suffered from the August 6, 2010 motor vehicle accident. In addition to its answer, Erie filed a counterclaim against the Estate.[8]

---

[7] The Complaint was initially filed by Brian's estate and Brian's daughter Laura Harris, in her capacity as both Special Representative of the Estate and Individually. The Complaint was filed against Sparks, the Stouders, and Erie Exchange. Thereafter, however, Anna Marie was substituted as the real party in interest in the place of Laura, acting individually, and Erie Indemnity Company, as the Attorney-in-Fact for the Subscribers at Erie Exchange was substituted as the real party in interest in the place of Erie Exchange.

[8] Following recusal by a judge of the Elkhart Superior Court, the case was assigned to a special judge in La Porte Superior Court (Case No. 46D02-1511-CT-2015).

[8]     Erie also filed a motion for summary judgment as to Count III, seeking declaratory judgment that the Policy did not provide UM coverage[9] and its designation of evidence.  Following full briefing, the trial court held a hearing on the parties' cross-motions for summary judgment and, on April 11, 2016, issued its interlocutory order denying Erie's motion for summary judgment and granting the Estate's cross-motion for summary judgment ("SJ Order").  In the SJ Order, the trial court addressed the liability issues and determined that the Estate was entitled to recover for Brian's accident under the Policy's UM Endorsement; however, the trial court did not address the damages issue.  In an Agreed Entry, dated May 12, 2016, the parties stipulated "as to the damage issues,"[10] but only "pursuant to a full and complete reservation of their respective appellate rights in connection with the appeal of the liability issues determined by the Court's [SJ Order.]"  *Appellant's App. Vol. 4* at 184.  Erie now appeals.[11]

---

[9] Erie's Counterclaim also requested declaratory judgment that the Auto Medical Payments Endorsement in the Policy did not apply to the accident.  Apparently, the Estate had submitted a claim for auto medical payment, which Erie had denied.  It appears that the Estate did not address this coverage in its complaint, focusing, instead, on the UM coverage.

[10]   The parties agreed that, upon a finding of liability, the Estate was entitled to $1,000,000 under the Policy's UM coverage and $160,000 of prejudgment interest.  *Appellant's App. Vol. 4* at 184.

[11] "On November 24, 2011, there was a judgment that was entered finding liability against Mr. Sparks and damages of $4,643,295."  *Tr.* at 31.  The Stouders and Sparks, who is currently incarcerated, do not participate in this appeal.

# Discussion and Decision

## *Standard of Review*

On appeal from a grant of summary judgment, our standard of review is the same as that of the trial court. *FLM, LLC v. Cincinnati Ins. Co.*, 973 N.E.2d 1167, 1173 (Ind. Ct. App. 2012), *trans. denied*. We stand in the shoes of the trial court and apply a de novo standard of review. *Id*. Our review of a summary judgment motion is limited to those materials designated to the trial court, and summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C), (H); *FLM*, 973 N.E.2d at 1173. We view the pleadings and designated materials in the light most favorable to the non-moving party. *FLM*, 973 N.E.2d at 1173. Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id*.

A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Id*. Where a trial court enters specific findings and conclusions, they offer insight into the rationale for the trial court's judgment and facilitate appellate review, but are not binding upon this court. *Id*. We will affirm upon any theory or basis supported by the designated materials. *Id*. Here, the parties filed cross-motions for summary judgment, however, that does not alter our standard of review. *Id*. at 1173-74. "Instead, we must consider each motion separately to determine

whether the moving party is entitled to judgment as a matter of law." *Id*. at 1174.

[11]     At issue in this case is whether a term of the Policy, regarding whether Brian is protected by the Policy's UM coverage, is ambiguous. Insurance policies are governed by the same rules of construction as other contracts, and their interpretation is a question of law. *Bradshaw v. Chandler*, 916 N.E.2d 163, 166 (Ind. 2009). "When interpreting an insurance policy, our goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. We construe the insurance policy as a whole and consider all of the provisions of the contract and not just the individual words, phrases or paragraphs." *Buckeye State Mut. Ins. Co. v. Carfield*, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009), *trans. denied*. Further, we "seek to harmonize the provisions, rather than leave them in conflict." *Erie Ins. Exch. v. Sams*, 20 N.E.3d 182, 188 (Ind. Ct. App. 2014), *trans. denied*. "[W]here, as here, we interpret an endorsement to an insurance policy, the endorsement 'must be read together, construed, and reconciled with the policy to give effect to the whole.'" *Masten v. AMCO Ins. Co.*, 953 N.E.2d 566, 569 (Ind. Ct. App. 2011) (quoting *Stevenson v. Hamilton Mut. Ins. Co.*, 672 N.E.2d 467, 473 (Ind. Ct. App. 1996), *trans. denied*), *trans. denied*. "We construe the policy and relevant endorsements from the perspective of 'an ordinary policyholder of average intelligence,' and if 'reasonably intelligent people may interpret the policy's language differently,' the policy is ambiguous." *Id*. (quoting *Bradshaw*, 916 N.E.2d at 166). "If there is an ambiguity, we construe

the policy strictly against the insurer." *Milbank Ins. Co. v. Indiana Ins. Co.*, 56 N.E.3d 1222, 1229 (Ind. Ct. App. 2016).

[12] Pursuant to Indiana Code section 27-7-5-2, insurance companies must provide UM coverage in all existing or newly issued automobile policies up to the policy limits, unless such coverage is rejected in writing. *Liberty Mut. Fire Ins. Co. v. Beatty*, 870 N.E.2d 546, 549 (Ind. Ct. App. 2007). The UM Endorsement in Erie's Policy reads, in pertinent part: [12]

> **OUR PROMISE**
>
> **We** will pay damages for bodily injury and property damage that the law entitles **you** or **your** legal representative to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**.
>
> Damages must result from a motor vehicle accident arising out of the ownership or use of the **uninsured motor vehicle** or **underinsured motor vehicle** as a motor vehicle and involve:
>
> 1. bodily injury to **you** or others **we** protect. Bodily injury means physical harm, sickness, disease or resultant death to a person; or
>
> 2. *when purchased* – property damage, meaning destruction of or injury to . . . .
>
> **OTHERS WE PROTECT**
>
> 1. Any **relative**, if you are an individual.

---

[12] The UM Endorsement begins with a Definitions section that defines uninsured motor vehicle and underinsured motor vehicle and explains what each of those terms "does not include." That language is omitted here because the parties agree that Sparks drove an uninsured motor vehicle.

2. Anyone else, while **occupying** any **owned auto we insure** other than one being used without the permission of the owner.

3. Anyone else who is entitled to recover damages because of bodily injury to any person protected by this coverage.

. . . .

**LIMITATIONS ON OUR DUTY TO PAY**

**What we Do Not Cover - Exclusions**

This insurance does not apply to:

    . . . .

7. injury sustained by **anyone we protect** while **occupying** or struck as a pedestrian by an **uninsured or underinsured motor vehicle** which is owned by **you** or a **relative**.

*Appellant's App. Vol. 2* at 118-19 (emphasis in original).

[13] The first part of the Policy set forth Definitions, which were prefaced with the phrase: "*Throughout* **your** *policy and its endorsement forms, the following words have a special meaning when they appear in bold type*[.]" *Appellant's App. Vol. 2* at 93. The pertinent terms for the UM coverage defined in the Policy are "**we**, **us**, **our**, and **The ERIE**," "**you**, **your**, or **Named Insured**," "**individual**," "**anyone we protect**," "**autos we insure**," and "**owned auto**." *Id*. at 93-95, 108. The key term at issue here is "others **we** protect" as used in the following paragraph under **OUR PROMISE**:

Damages must result from a motor vehicle accident arising out of the ownership or use of the **uninsured motor vehicle** or **underinsured motor vehicle** as a motor vehicle and involve:

1. bodily injury to **you** or <u>others **we** protect</u>. Bodily injury means physical harm, sickness, disease or resultant death to a person[.]

*Id*. at 118 (underlining added). "Others **we** protect" is not defined in the Policy.

[14] Here, the question is whether the UM coverage allows the Estate to recover damages in connection with Brian's death. The parties disagree regarding their interpretation of "others **we** protect." *Appellant's App*. Vol. 3 at 118. Erie emphasizes that the phrase "others **we** protect" is used only in the UM Endorsement and that the description following the heading **OTHERS WE PROTECT** is set forth in the very next paragraph. Erie argues that a reasonable person reading that section would conclude that the term "others **we** protect" is defined by the language under the heading **OTHERS WE PROTECT,** a heading under which neither Brian nor the Estate falls.

[15] The Estate's position focuses on: (1) Policy language found in the Definitions section of the Indiana Endorsement -- "*Words and phrases in bold type are used as defined in [the Indiana Endorsement]. If a word or phrase in bold type is not defined in this endorsement, then the word or phrase is defined in the DEFINITIONS Section of the policy,*" *Appellant's App.* Vol. 3 at 107; and (2) Policy language found in the UM Endorsement -- "Words in bold type are used as defined in the policy or in this form." *Id*. at 118. Erie admits that words in the Policy that appear in bold type have special defined meanings. *Appellant's App. Vol. 3* at 140. The Estate notes that this phrase does not appear in bold anywhere in the Policy and argues that the absence of this phrase in the Definitions section and the UM Endorsement

contravenes Erie's contention that "others **we** protect" is a defined term under the **OUR PROMISE** section of the UM Endorsement. *Appellee's Br*. at 35. Accordingly, the Estate argues that the phrase "others **we** protect" is ambiguous because the phrase is not bold and, therefore, not defined. *Appellee's Br.* at 31. The Estate asserts that Brian falls within the category "others **we** protect" because Erie admits that, under certain circumstances, Brian "could have rights to uninsured motorist bodily injury . . . coverage" under the UM Endorsement. *Appellant's App. Vol. 3* at 143.

[16] Erie contends that the only person who meets the definition of "you" is Formco. *Appellant's App. Vol. 3* at 152. Formco is a corporate entity, not a living person capable of sustaining personal injuries in an accident with an uninsured motorist. *Id*. Erie admits that there are no circumstances under which Formco could ever claim entitlement to coverage under the UM Endorsement for personal injury resulting from an accident involving an uninsured or underinsured motor vehicle. *Id*. at 153. Thus, as written, the coverage the UM Endorsement purports to provide to "you," is illusory because there are no circumstances under which Formco could ever make a claim for bodily injury under the UM Endorsement. Here, finding that the Estate can recover under the UM Endorsement for Brian's bodily injury, advances the public policy of providing coverage to those protected by an insurance policy.

[17] When reviewing insurance policy language, "If the language [in an insurance policy] is clear and unambiguous, [courts] give the language its plain and ordinary meaning." *Masten*, 953 N.E.2d at 569 (citation omitted);

*see also, Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992). "An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning." *Id.* at 569-570 (citation omitted); *see also, Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985).

[18] We agree with the trial court that the phrase "others **we** protect" is "susceptible to more than one interpretation" where reasonable people, or in this case reasonable lawyers, "would differ as to its meaning." Here, reasonable people differ as to the meaning of the policy language, as shown through the parties' many brief filings, oral arguments, and the SJ Order. Both Erie's argument -- that the Estate and Brian are not covered because they do not qualify as "you" or "others we protect" as defined by the policy -- and the Estate's argument -- that the Estate and Brian do qualify as "others we protect" because the phrase "others we protect" is not all bolded and is not expressly defined – are reasonable. Therefore, the language providing coverage for "others **we** protect" is ambiguous.

[19] Generally, where the terms of a policy are ambiguous, we construe the ambiguity strictly against the insurer." *Milbank Ins.*, 56 N.E.3d at 1229. Erie argues that Brian was not a named insured when he made his claim against the Policy for UM coverage, and therefore, we must give a neutral construction to ambiguities in the policy language because he was claiming coverage as a third party to the agreement. *See Empire Fire v. Frierson*, 49 N.E.3d 1075, 1079 (Ind. Ct. App. 2016) (dispute between third-party

claimant and insurer requires determination of general intent of contract from neutral stance).

[20] In *Argonaut Ins. Co. v. Jones*, 953 N.E.2d 608, 615 (Ind. Ct. App. 2011), *trans. denied*, our court observed that the factor distinguishing cases in "which we apply a neutral stance. . . appears to be that the party that was seeking to benefit . . . was not a party to the contract." *Id*. (citing *Burkett v. Am. Family Ins. Grp.,* 737 N.E.2d 447, 452 (Ind. Ct. App. 2000) (citing *Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.,* 260 Ind. 32, 291 N.E.2d 897 (1973), and *Am. Family Mutual Ins. Co. v. Nat'l Ins. Ass'n,* 577 N.E.2d 969 (Ind. Ct. App. 1991))). Whether the claimant was a party to the policy is not dispositive. We agree with the *Argonaut* Court, that a more helpful distinction lies in whether the "claimants to the insurance policy were strangers to the policyholders entirely." *Id*. at 615-16.

[21] Here, Brian was not a stranger to either the insurer or the insured. Brian had been Formco's employee for more than seventeen years and was one of only three drivers listed on the application for a commercial policy purchased to cover more than eleven vehicles. Erie knew of Brian because it calculated Formco's premium by using the information that Brian was a scheduled driver, along with Jean Woodworth and David Slagel, President of Formco.

[22] Because Brian was not a stranger to the policy and fit squarely within the class of individuals that the policy was intended to benefit, we reject a

neutral reading and construe the ambiguity against Erie. We recognize that the term "others **we** protect" is neither bolded nor listed in any of the definitions in the Policy. If that phrase was intended to be a specifically defined phrase, it needed to appear completely in bold, instead of just "other **we** protect." Moreover, the complete phrase must have been set forth as a definition. As such, we find that Brian, who Erie agrees has protection under the Policy, falls within the group of "others **we** protect." *See Milbank Ins.*, 56 N.E.3d at 1229. Here, the Estate can recover UM damages in this wrongful death suit, because, under the terms of the UM Endorsement, the Estate falls within the category that allows recovery to "Anyone else who is entitled to recover damages because of bodily injury to any person protected by this coverage." *Appellant's App. Vol. 2* at 118.

[23] Concluding that Brian falls within the category of "others **we** protect," the question remains whether the UM Endorsement provides coverage to Brian when he is outside a scheduled vehicle, e.g., when he is a pedestrian. We find that it does. The UM Endorsement expressly excludes coverage for injuries "sustained by **anyone we protect** while . . . struck as a pedestrian by an **uninsured** or **underinsured motor vehicle** which is owned by **you** or **a relative**." *Appellant's App. Vol. 3* at 143. Erie would not have included this exclusion unless it was necessary to set forth an exception to its general rule that the UM Endorsement covers "others **we** protect" when they are pedestrians. Brian was covered unless he was struck as a pedestrian by an uninsured or underinsured vehicle owned by Formco.

[24] Erie admitted that "the phrase 'struck as a pedestrian' includes 'anyone **we** protect' who is struck by an '**uninsured** or **underinsured motor vehicle'** when 'anyone **we** protect' is not inside an '**uninsured**' or '**underinsured motor vehicle**.'" *Id.* at 145. Here, Brian was struck while outside the uninsured Chevy, which Formco did not own. We agree with the Estate that the inclusion of this limitation leads to the conclusion that Brian had a commensurate right to coverage when, as a pedestrian, he was struck by an uninsured or underinsured vehicle like the Chevy, which Formco did not own.

[25] Construing the ambiguous language against the insurer, we find that Brian fell within the Policy's UM coverage. There are no genuine issues of material fact, and we affirm the trial court's entry of summary judgment.

[26] Affirmed.

Robb, J., and Altice, J., concur.