



FILED
Jun 19 2018, 2:21 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N T H E

# Indiana Supreme Court

Supreme Court Case No. 18S-CT-114

## Erie Indemnity Company, as Attorney-in-Fact for the Subscribers at Erie Insurance Exchange,
*Appellant (Defendant)*

–v–

## Estate of Brian L. Harris, by Its Special Representative, Laura Harris, and Anna Marie Harris, Spouse of Brian L. Harris, Deceased,
*Appellees (Plaintiffs)*

Argued: February 21, 2018 | Decided: June 19, 2018

Appeal from the LaPorte Superior Court 2
No. 46D02-1511-CT-2015
The Honorable Richard R. Stalbrink, Jr., Special Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 46A03-1606-CT-1261

**Opinion by Justice Goff**
Chief Justice Rush and Justices David, Massa, and Slaughter concur.

**Goff, Justice.**

This case arises from a tragic accident where an uninsured driver under the influence of methamphetamine struck and killed Brian Harris who was mowing his home's lawn near the roadside. Harris's estate sought uninsured motorist benefits under his employer's commercial auto policy, claiming he qualified for coverage under the policy term "others **we** protect." The insurance company denied the claim, finding Harris was not entitled to coverage under the policy, and the parties litigated the matter to our courthouse door.

Ostensibly, the issue before us remains whether the policy term "others **we** protect" included Harris. But unpacking this broader issue reveals a narrower, threshold one—whether "others **we** protect" is ambiguous and amenable to judicial interpretation. Harris's estate urges that because the term "others **we** protect" is susceptible to multiple reasonable interpretations it represents an ambiguous term in need of judicial construction and must be construed in the estate's favor. Meanwhile, the insurance company insists that, because a separate policy section entitled **OTHERS WE PROTECT** explains who qualifies as "others **we** protect," the term is unambiguous and impervious to judicial construction. We agree with the insurance company and, therefore, reverse the trial court's judgment.

## Factual and Procedural History

On December 11, 1993, Erie Insurance Exchange ("Erie") issued a Pioneer Commercial Auto Policy No. Q12 1130119 F7 (the "Policy") to Formco, Inc. ("Formco"), a plastics design and manufacturing company in Elkhart County, Indiana. The Declarations Page listed Formco as the only Named Insured and no other Additional Insureds. Formco renewed the Policy every year from 1994 through 2010, each year keeping itself as the lone Named Insured. From 2005 through 2010, the Policy's "Autos Covered" section listed a 2004 Toyota pickup truck (VIN # 5TBBT44134S450733) as a scheduled vehicle. Formco owned the truck and allowed its longtime employee Brian Harris to drive it as his primary

vehicle for personal and business transportation. Like prior iterations, the 2010 Policy included an Uninsured/Underinsured Motorists Coverage Endorsement—Indiana (the "UM Endorsement") that afforded coverage for bodily injury and property damage resulting from an accident with an uninsured motorist.

In the UM Endorsement, Erie promised:

> **We** will pay damages for bodily injury and property damage that the law entitles **you** or **your** legal representative to recover from the owner or operator of an **uninsured motor vehicle** . . . . Damages must result from a motor vehicle accident arising out of the ownership or use of the **uninsured motor vehicle** . . . as a motor vehicle and involve . . . bodily injury to **you** or others **we** protect.

Appellant's App. Vol. II, p. 118. Just underneath this promise followed the section entitled **OTHERS WE PROTECT**, which listed 4 categories of potential claimants for uninsured motorist benefits. *Id.* The Policy with this UM Endorsement was in effect on August 6, 2010, when tragedy befell Formco employee Brian Harris.

On that summer evening, while operating his personal riding lawnmower at his private residence, Harris was struck and killed by an uninsured motorist. His estate (the "Estate") submitted claims for uninsured motorist bodily injury ("UMBI") and MedPay benefits under the Policy, and Erie subsequently denied those claims. The Estate sued Erie seeking, in part, a declaratory judgment entitling it to UMBI coverage benefits for the accident that killed Harris and damages up to the Policy limits.[1]

---

[1]The Estate also sued the truck's driver (Noel M. Sparks) along with the truck's owners (Brent and Jamie Stouder), claiming Sparks negligently drove the truck and the Stouders negligently entrusted their truck to Sparks. When Sparks and the Stouders failed to appear or otherwise respond to the complaint, the trial court entered default judgment against them and awarded the Estate damages in the amount of $4,643,295.00 along with costs.

Erie eventually moved for summary judgment, arguing, as a matter of law, the Policy did not provide UMBI coverage to the Estate for Harris's death because he did not qualify as "you," "others we protect," "anyone we protect," or "persons we protect" under the Policy, including the UM Endorsement. The Estate countered with a cross-motion for summary judgment, arguing, as a matter of law, "Harris qualified as 'others **we** protect' under the '**OUR PROMISE**' section of the UM[] Endorsement when he was struck and killed by an uninsured motorist."

The trial court determined the case turned upon whether the phrase "others **we** protect" as used in the **OUR PROMISE** section included Harris. The court found the phrase ambiguous and construed it in the Estate's favor to include Harris. Since the court concluded there were no genuine issues of material fact, it granted summary judgment to the Estate.

Erie appealed, and the Court of Appeals affirmed the trial court's judgment. *Erie Indem. Co. v. Estate of Harris*, 80 N.E.3d 923 (Ind. Ct. App. 2017). Like the trial court below, the Court of Appeals found "others **we** protect" ambiguous and construed it in the Estate's favor to include Harris. *Id.* at 930–31. Erie then petitioned for transfer, which we granted, thereby vacating the Court of Appeals opinion. *See* Ind. Appellate Rule 58(A). We now reverse and remand with instructions to enter summary judgment for Erie.

## Standard of Review

This Court reviews summary judgments de novo, applying the same standard as the trial court. *SCI Propane, LLC v. Frederick*, 39 N.E.3d 675, 677 (Ind. 2015). Summary judgment is appropriate only when the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). *See Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Parties filing cross-motions for summary judgment neither alters this standard nor changes our analysis—"we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *SCI Propane*,

*LLC*, 39 N.E.3d at 677. Matters involving disputed insurance policy terms present legal questions and are particularly apt for summary judgment. *Wagner v. Yates*, 912 N.E.2d 805, 808 (Ind. 2009).

# Discussion and Decision

This matter involves whether Formco's commercial auto policy provides coverage for Harris's death in a motor vehicle accident involving an uninsured motorist, when Harris was not occupying a scheduled vehicle. The parties agree this case presents no genuine issue of material fact, and presents only one legal question, that is, the meaning of one term in the Policy's UM Endorsement—"others **we** protect."

The UM Endorsement provides in relevant part:

> **OUR PROMISE**
>
> **We** will pay damages for bodily injury and property damage that the law entitles **you** or **your** legal representative to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**.
>
> Damages must result from a motor vehicle accident arising out of the ownership or use of the **uninsured motor vehicle** or **underinsured motor vehicle** and involve:
>
> 1.  [B]odily injury to **you** or others **we** protect. Bodily injury means physical harm, sickness, disease or resultant death to a person;
>
> * * *
>
> **OTHERS WE PROTECT**
>
> 1.  Any **relative**, if **you** are an individual.

2. Anyone else, while **occupying** any **owned auto we insure** other than one being used without the permission of the owner.

3. Anyone else who is entitled to recover damages because of bodily injury to any person protected by this coverage.

4. If **you** are an individual, anyone else while **occupying** a **non-owned auto we insure** other than:

   a. [O]ne **you** are using that is owned by another resident of **your** household.
   b. [O]ne furnished or available for the regular use of **you** and any resident of **your** household.
   c. [O]ne being operated by anyone other than **you** or a **relative**.

Exhibit A, Appellant's App. Vol. II, p. 63.

We must first note that words and phrases appearing in bold type throughout the Policy and UM Endorsement are defined terms, informing the reader those words and phrases have special meaning. Besides appearing in bold type, defined terms are also included in **DEFINTIONS** sections throughout the Policy and endorsements. *See, e.g.,* Exhibit 1, Appellant's App. Vol. II, p. 93 ("Throughout your policy and its endorsement forms, the following words have a special meaning when they appear in bold type[.]"). We are obliged to give defined terms their special meanings.

The parties acknowledge that to receive UMBI benefits Harris must qualify as either "**you**" or "others **we** protect." And both parties agree Harris did not qualify as "**you**" since he did not meet that definition—he was not Formco.

So this case narrows to one dispositive legal question: whether Harris qualified as "others **we** protect" in the Policy's UM Endorsement. On this question the parties disagree and present us with two opposing interpretations for "others **we** protect." In simplest terms, the Estate's offered meaning includes Harris while Erie's does not. But before we can

interpret the policy and thereby endorse either party's proposed meaning, there is a necessary threshold inquiry: whether "others **we** protect" is an ambiguous term amenable to judicial construction.

## I. Indiana law instructs that courts may construe only ambiguous policy terms and provisions.

Insurance policies are contracts "subject to the same rules of judicial construction as other contracts." *State Farm Mut. Auto. Ins. Co. v. Jakubowicz*, 56 N.E.3d 617, 619 (Ind. 2016). When confronted with a dispute over the meaning of insurance policy terms, Indiana courts afford clear and unambiguous policy language its plain, ordinary meaning. *Holiday Hosp. Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 577 (Ind. 2013). By contrast, courts may construe—or ascribe meaning to—ambiguous policy terms only. *Id.*

Our first task, therefore, is to determine whether the policy term at issue is ambiguous. We have said "that failure to define a term in an insurance policy does not necessarily make it ambiguous" and thus subject to judicial construction. *Wagner*, 912 N.E.2d at 810. As we see it, failing to define a policy term merely means it has no exclusive special meaning, and the courts can interpret it.

But, in that vein, we caution that parties to an insurance contract may not invite judicial construction by creating ambiguity. They may not make a term ambiguous by simply offering different policy interpretations. *Cf. Puryear v. Progressive N. Ins. Co.*, 790 N.E.2d 138, 141 (Ind. Ct. App. 2003). In other words, ambiguity does not arise from mere disagreement over a policy term's meaning—that is, where "one party asserts an interpretation contrary to that asserted by the opposing party." *Wagner*, 912 N.E.2d at 810. Rather, insurance policy provisions are ambiguous only if they are "susceptible to more than one **reasonable** interpretation." *Holiday Hosp. Franchising, Inc.*, 938 N.E.2d at 578 (emphasis added).

When evaluating alleged ambiguities—whether there exist two reasonable interpretations for one policy term—courts read insurance policies "from the perspective of . . . ordinary policyholder[s] of average

intelligence." *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243, 246–47 (Ind. 2005). If reasonably intelligent policyholders would honestly disagree on the policy language's meaning, then we will find the term ambiguous and subject to judicial construction. *Id.* at 247. Conversely, if reasonably intelligent policyholders could not legitimately disagree as to what the policy language means, we deem the term unambiguous and apply its plain ordinary meaning.

With these considerations in mind, we turn now to the instant Policy and UM Endorsement.

## II. The policy term "others *we* protect" is susceptible to only one reasonable interpretation, so it is not ambiguous and not subject to judicial construction.

As for the Policy here, the parties present two differing interpretations for "others **we** protect." On one hand, Erie insists "others **we** protect" carries the meaning outlined in the **OTHERS WE PROTECT** section directly beneath the **OUR PROMISE** section, therefore making the phrase unambiguous and impervious to judicial construction. At first blush, this interpretation seems reasonable.

On the other hand, the Estate reasons that "others **we** protect" includes "individuals such as Mr. Harris who were specifically listed in the Erie Policy for purposes of protection and coverage." While this proposed interpretation appears initially to be a reasonable one, it simply is not reasonable because it requires **OTHERS WE PROTECT** to mean something different from "others **we** protect." To be sure, this proposed interpretation depends upon the premise that the separate **OTHERS WE PROTECT** section cannot and does not define the phrase "others **we** protect" in the **OUR PROMISE** section because "others **we** protect" does not meet the criteria for defined terms—it is not bolded and does not appear in a **DEFINITIONS** section. The Estate's interpretation, therefore, imputes a separate meaning to **OTHERS WE PROTECT**, specifically that the separate section identifies remote claimants who might be entitled to

UMBI benefits even though they are neither "**you**" (i.e., Formco) nor "others **we** protect" (i.e., listed drivers like Harris).

Faced with these competing proposed interpretations, we must assess whether both are reasonable from the standpoint of an ordinary policyholder before diving into judicial construction. We consider each interpretation in turn.

### A. It is reasonable to conclude that OTHERS WE PROTECT gives meaning to "others *we* protect."

Erie proposes that the separate **OTHERS WE PROTECT** section gives meaning to "others **we** protect" used in the **OUR PROMISE** section. We find this interpretation reasonable, if not inevitable. The phrase "others **we** protect" appears only once in the UM Endorsement and is immediately followed by a section titled with the same three words—**OTHERS WE PROTECT**. We think it eminently reasonable for two phrases consisting of identical words and located near one another to share the same meaning. While it is not a "definition" per se, the proximity and similarity between the phrases make it is reasonable to understand that the **OTHERS WE PROTECT** section serves as an explanatory list outlining who can be included in "others **we** protect." In other words, the section gives meaning to the corresponding phrase. Erie could have (and probably should have) removed any doubt as to the phrase's meaning by making "others **we** protect" a defined term rather than a standalone section. But for whatever reason, it did not and invited this litigation. Erie's drafting miscues notwithstanding, we still think it obvious that **OTHERS WE PROTECT** gives meaning to "others **we** protect." And more importantly, we believe ordinary policyholders, looking at the four corners of the Policy, would agree that "others **we** protect" means **OTHERS WE PROTECT**. We therefore find Erie's proffered interpretation a reasonable one.

## B. The Estate's proposed interpretation for "others *we* protect" is unreasonable.

As for the Estate's twofold view that the phrase "others **we** protect" includes scheduled drivers like Harris while **OTHERS WE PROTECT** identifies additional remote claimants that are neither "**you**" nor "others **we** protect," we find that proposed interpretation unreasonable on two fronts.

First, the Policy language in no way indicates that "others **we** protect" applies to scheduled drivers who would be eligible for coverage. Contrary to the Estate's claims, neither the Declarations pages, nor the Policy, nor the UM Endorsement expressly list Harris as a "Named Insured," "Additional Insured," or even a protected or covered driver. Exhibit 22, Appellant's App. Vol. III, pp. 39–75. Although Formco's initial application for a commercial auto policy included Harris's name as a "driver," Exhibit C, Appellant's App. Vol. II, p. 70, and Erie's subsequent underwriting documents listed Harris as a scheduled driver, Appellant's App. Vol. III, pp. 77-80, ¶¶ 9–29, those documents do not transform a listed driver into an insured or a person covered or protected under the UM Endorsement. *Cf. Little v. Progressive Ins.*, 783 N.E.2d 307, 311 (Ind. Ct. App. 2003) (citation omitted) (quoting *Couch on Insurance* for the maxim that the "regular use of the vehicle, despite additional premiums charged for such use, is not given the status of a named insured where such a person is not so named in the policy"); *Puryear*, 790 N.E.2d at 140–41 (quoting *Millspaugh v. Ross*, 645 N.E.2d 14, 16–17 (Ind. Ct. App. 1994)) ("That [the plaintiff] is listed as the principal driver, while relevant for other purposes, including the amount of premiums to be paid, does not transform him into a person qualified for compensation under the uninsured motorist provision of the policy."). To arrive at the Estate's strained interpretation, a policyholder must read additional outside information into the Policy and UM Endorsement and then draw conclusions based on that very information. That strikes us as unreasonable. We do not believe an ordinary policyholder would take that approach.

Second, the Estate's proposed interpretation necessarily creates no fewer than three categories of claimants who could obtain UMBI benefits under the UM Endorsement: "**you**," "others **we** protect," and "**OTHERS WE PROTECT**." We see immediately that this view produces two categories that have the same name but different meanings. For example, the phrase "others **we** protect" would seemingly include any person identified in an application or underwriting documents while **OTHERS WE PROTECT** would include even more remote, additional people who could be covered depending on the situation or their relationship to "**you**." We do not believe an ordinary policyholder would understand the same phrase to have these different meanings, especially when there exists a self-contained explanation on the same page of the endorsement. As we see it, and as an ordinary policyholder would likely see it, the Estate's proposed interpretation injects needless conflict and confusion into the policy concerning two closely related if not identical terms—i.e., "others **we** protect" versus **OTHERS WE PROTECT**. Consequently, we conclude that the Estate's interpretation of "others **we** protect" is unreasonable.

Since we have not been presented with two reasonable interpretations of "others **we** protect," as a matter of law, we cannot say the phrase is ambiguous, and we cannot judicially construe it. Instead, we move forward in our analysis by giving "others **we** protect" its plain meaning as found in the **OTHERS WE PROTECT** explanatory section.

## III. Under these facts and circumstances, the Estate cannot receive UMBI benefits based on Harris's death.

As we said before, the parties agreed that Harris could receive UMBI benefits under the UM Endorsement only if he qualified as "others **we** protect." The **OTHERS WE PROTECT** section outlines four types of claimants who might qualify as "others **we** protect"; they include:

1. Any **relative**, if **you** are an individual.

2. Anyone else, while **occupying** any **owned auto we insure** other than one being used without the permission of the owner.

3. Anyone else who is entitled to recover damages because of bodily injury to any person protected by this coverage.

4. If **you** are an individual, anyone else while **occupying** a **non-owned auto we insure** other than:

   a. [O]ne **you** are using that is owned by another resident of **your** household.
   b. [O]ne furnished or available for the regular use of **you** and any resident of **your** household.
   c. [O]ne being operated by anyone other than **you** or a **relative**.

Appellant's App. Vol. II, p. 118. Since "**you**" is not an individual but Formco, Harris cannot meet either number one or number four. Next, Harris does not qualify under number two because, at the time of the accident, he was not occupying an auto Formco owned and Erie insured; rather, he was occupying his personal riding lawnmower. Finally, Harris does not qualify under number three because he is not entitled to recover benefits based on bodily injury to someone else. Applying these categories, we cannot say Harris qualified as "others **we** protect" under the UM Endorsement.

## Conclusion

Brian Harris died in a tragic, senseless accident, and his Estate understandably sought UMBI compensation from Erie to fill the resulting financial void. But despite the sympathy we have for the Estate and despite Erie's unartful policy drafting—we simply cannot say that "others **we** protect" is an ambiguous term amenable to judicial interpretation. The UM Endorsement itself explains to policyholders who may qualify as "others **we** protect" by including an illustrative list in a prominently displayed, stand-alone section entitled **OTHERS WE PROTECT**. And so

we believe ordinary policyholders could not honestly disagree as to the term's meaning. They would agree that the **OTHERS WE PROTECT** section gives meaning to "others **we** protect," rather than creating a third group of remote claimants.

Because we find the disputed policy term "others **we** protect" unambiguous, we cannot construe it and must give it the plain meaning found within the UM Endorsement. Accordingly, as a matter of law, Brian Harris did not qualify as "others **we** protect" under the UM Endorsement in his employer's commercial auto policy when he was tragically struck and killed by an uninsured motorist. We hold the trial court erred in finding otherwise and in granting summary judgment to the Estate. We therefore reverse the trial court's judgment and remand with instructions to enter summary judgment for Erie.

Rush, C.J., and David, Massa, and Slaughter, JJ., concur.

ATTORNEY FOR APPELLANT
Mark R. Smith
Smith Fisher Maas Howard & Lloyd, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
Scott M. Keller
Michael J. Anderson
Tracey S. Schafer
Anderson, Agostino & Keller, P.C.
South Bend, Indiana

ATTORNEY FOR AMICUS CURIAE INSURANCE INSTITUTE OF INDIANA, INC.
Bryan H. Babb
Bose McKinney & Evans LLP
Indianapolis, Indiana