## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 24 2020, 7:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas G. Bradburn
Noblesville, Indiana

ATTORNEY FOR APPELLEE

Kyle D. Michael
Cincinnati, Ohio

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kyli D. Smith,<br>*Appellant-Defendant,*<br><br>v.<br><br>National Collegiate Student<br>Loan Trust,<br>*Appellee-Plaintiff.* | June 24, 2020<br><br>Court of Appeals Case No.<br>19A-CC-3041<br><br>Appeal from the DeKalb Superior<br>Court<br><br>The Honorable Monte L. Brown,<br>Judge<br><br>Trial Court Cause No.<br>17D02-1901-CC-43 |

**Tavitas, Judge.**

# Case Summary

[1] Kyli Smith ("Smith") appeals the grant of summary judgment in favor of National Collegiate Student Loan Trust 2005-1 ("NCSLT"). We affirm.

# Issues

[2] Smith raises two issues on appeal, which we restate as follows:

> I.  Whether NCSLT designated inadmissible hearsay evidence in support of its motion for summary judgment.
>
> II. Whether a genuine issue of material fact exists regarding NCSLT's ownership of and right to collect on Smith's educational loan account.

# Facts

[3] On October 9, 2004, Smith executed a Bank One "Education One" loan agreement ("Contract") with Bank One, N.A. ("Bank One").[1] Appellant's App. Vol. II p. 56. Bank One disbursed the loan funds to Smith on October 22, 2004.

[4] On February 23, 2005, Bank One executed a Pool Supplement Agreement, wherein Bank One "transfer[red], s[old], set[ ] over and assign[ed]" a bundle of educational loans to The National Collegiate Funding, LLC. *See id*. at 18. The bundle of educational loans was itemized in an attachment to the Pool

---

[1] Smith's mother, Charmaine Smith, co-signed the educational loan.

Supplement Agreement and was referred to in the Pool Supplement Agreement as "the TRANSFERRED BANK ONE LOANS[.]" *Id.* Smith's educational loan was among the transferred Bank One Loans. *Id.* at 76 ("Each of the following Pool Supplements was entered into [ ]: . . . Bank One, N.A., [ ] for loans that were originated under Bank One's [ ] EDUCATION ONE Loan Program . . . .") (emphasis in original). That same day, pursuant to a Deposit and Sale Agreement, The National Collegiate Funding, LLC, sold the same bundle of educational loans to NCSLT.

[5] It is undisputed that Smith: (1) borrowed the educational funds; (2) has not made a payment on the loan since November 21, 2017; and (3) owes an outstanding balance. On January 24, 2019, NCSLT filed a complaint alleging that Smith breached the Contract and owed $6,854.75, as well as accrued and ongoing statutory interest. On March 29, 2019, Smith filed her answer and asserted various affirmative defenses, including that NCSLT lacked standing to pursue its claim.

[6] NCSLT filed a motion for summary judgment, a memorandum in support, and supporting designated materials on July 15, 2019. NCSLT's designated materials included the affidavit of Jacqueline Jefferis, in her capacity as the business records custodian for Transworld Systems Inc. ("TSI").[2] On August 15, 2019, Smith filed her response in opposition to NCSLT's motion for

---

[2] Loan subservicer TSI is the custodian of NCSLT's loan documents.

summary judgment, as well as her supporting designated materials. On September 12, 2019, the trial court conducted a hearing[3] on the motion for summary judgment; and on October 10, 2019, the trial court entered its order granting NCSLT's motion for summary judgment. Smith filed a motion to correct error, which the trial court denied. Smith now appeals.

## Analysis

[7] Smith challenges the trial court's entry of summary judgment in favor of NCSLT. Summary judgment is appropriate only when the moving party shows there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Estate of Harris by Harris*, 99 N.E.3d 625, 629 (Ind. 2018), *reh'g denied*; *see also* Ind. Trial Rule 56(C). Once that showing is made, the burden shifts to the nonmoving party to designate appropriate evidence to demonstrate the actual existence of a genuine issue of material fact. *Schoettmer v. Wright*, 992 N.E.2d 702, 705-06 (Ind. 2013). When ruling on the motion, the trial court construes all evidence and resolves all doubts in favor of the non-moving party. *Id.* at 706. We review the trial court's ruling on a motion for summary judgment de novo, and we take "care to ensure that no party is denied his day in court." *Id.*

---

[3] The hearing on the motion for summary judgment appears to have been conducted telephonically. The record does not include a transcript.

"We limit our review to the materials designated at the trial level." *Gunderson v. State, Indiana Dep't of Nat. Res.*, 90 N.E.3d 1171, 1175 (Ind. 2018).

### I.    Hearsay

Smith argues that affiant Jefferis "[lacks] personal knowledge of Bank One's regularly conducted business activities and recordkeeping"; and "the documents and evidence offered by NCSLT in support of its motion for summary judgment are inadmissible hearsay."  Smith's Br. pp. 11, 13.  In ruling on a motion for summary judgment, the trial court must consider only the properly designated evidence which would be admissible at trial. *Zelman v. Capital One Bank (USA) N.A.*, 133 N.E.3d 244, 248 (Ind. Ct. App. 2019); *see* Ind. T.R. 56(E). Such evidence does not include inadmissible hearsay contained in an affidavit. *Id.*  Nor does it include documents that are unsworn statements or unverified exhibits.  *Id.*

Although hearsay evidence is generally inadmissible, Indiana Evidence Rule 803(6) provides for a business records exception to the hearsay rule.  To establish admissibility under Rule 803(6), the proponent of the hearsay evidence must show:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Ind. R. Evid. 803(6).

[10]     In support of her argument, Smith relies heavily on *Holmes v. National Collegiate Student Loan Trust,* 94 N.E.3d 722 (Ind. Ct. App. 2017); however, *Holmes* is readily distinguishable from the instant facts.  In *Holmes*, NCSLT sued Holmes for failure to pay a student loan debt.  Holmes argued that NCSLT lacked standing for its claim and challenged NCSLT's designated affidavits as inadmissible hearsay.  NCSLT successfully moved for summary judgment; however, a panel of this Court reversed on appeal.

[11]     The *Holmes* panel found:

> In support of summary judgment, NCSLT designated the affidavit of Jacqueline Jefferis, an employee of Transworld Systems, Inc. ("TSI"), the loan subservicer for U.S. Bank, National Association, the "Special Servicer" of NCSLT.  Jefferis stated that she was the "designated custodian of records" for TSI. She stated that she was "familiar with the process by which TSI received prior account records," that it was "TSI's regularly-conducted business practice to incorporate prior loan records . . . into TSI's business records," and therefore she was competent

and authorized to testify regarding Holmes's specific loan and "the business records attached" to the affidavit. The purpose of the Jefferis affidavit was to authenticate and lay the foundation for the admissibility of several attached documents, the most relevant for our review being the loan contract between Holmes and Charter One Bank, and the schedule of pooled loans transferred from Charter One Bank to National Collegiate Funding LLC, before then being sold and assigned to NCSLT.

*Holmes*, 94 N.E.3d at 724 (citations and footnote omitted). Although Jefferis' affidavit and supporting documents were hearsay, NCSLT argued that the affidavit and documents fell within the business records exception to the rule against hearsay. *See* Evid. R. 803(6). In rejecting this argument, the panel reasoned:

. . .[T]he Jefferis affidavit provided no testimony to support the admission of the contract between Holmes and Charter One Bank or the schedule of pooled loans sold and assigned to National Collegiate Funding, LLC, and then to NCSLT, as business records pursuant to Evidence Rule 803(6). There was no testimony to indicate that Jefferis was familiar with or had personal knowledge of the regular business practices or record keeping of Charter One Bank, the loan originator, or that of NCSLT regarding the transfer of pooled loans, such that she could testify as to the reliability and authenticity of those documents. Indeed, Jefferis offered no evidence to indicate that those records were made at or near the time of the business activities in question by someone with knowledge, that the records were kept in the course of the regularly conducted activities of either Charter One or NCSLT, and that making the records was part of the regularly conducted business activities of those third-party businesses. In *Speybroeck* [*v. State*, 875 N.E.2d 813, 821 (Ind. Ct. App. 2007)], this Court stated that, pursuant to Trial Rule 803(6), one business "could not lay the proper

foundation to admit the records of another business because the requesting business lacked the personal knowledge required to ensure reliability." *Id.* at 821; *accord Williams v. Unifund CCR, LLC*, 70 N.E.3d 375, 379 (Ind. Ct. App. 2017) (affiant from one business who did not have personal knowledge of another business's regularly conducted business activities could not lay foundation for admission of exhibit).

*Id*. at 725-26 (footnote and citations omitted). The panel, thus, deemed "the Jefferis affidavit insufficient to support the admission of two [ ] business records necessary for NCSLT to establish its prima facie case" and found it was inappropriate for the trial court to enter summary judgment in favor of NCSLT. *Id*. at 726.

[12] Here, in support of its motion for summary judgment, NCSLT again tendered an affidavit from Jefferis. The instant Jefferis affidavit provides, in part:

> 1. I am employed by Transworld Systems Inc. (hereinafter "TSI"), the Subservicer for [NCSLT] regarding [ ] the educational loan that is the subject matter of this Affidavit . . . . I am over the age of 18 and am competent and authorized to testify regarding this educational loan through my review of the business records maintained by TSI as custodian of records. These records include electronic data provided to TSI related to the educational loan, and the business records attached to this Affidavit.
>
> 2. My statements [ ] are based on personal knowledge of the educational loan which I obtained through my training, experience, investigation and review of the business records that are kept and maintained by TSI as dedicated record custodian of this educational loan, and also my understanding of the structured loan program by which this educational loan was

originated, funded, documented and sold ultimately to [NCSLT] . . . . The records I reviewed and relied upon in giving this Affidavit, including the business records attached [ ] (the "loan records"), consist of electronically stored documents and electronic data that are within TSI's care, custody or control.

3. TSI is currently [ ] the Subservicer for [NCSLT] . . . . [ ] TSI is custodian of the loan records, which records include loan origiation [sic] documents [NCSLT] obtained at acquision [sic]. The loan records also includ [sic] electronic transactions pertaining to the educational loan . . . including [ ] transactions that occurred before TSI became the Subservicer . . . .

4. I have access to, training and experience using the system of record utilized by American Education Services ("AES") to enter, maintain and access the loan records during its role as servicer, and I am familiar with the transaction codes reflected in those records.

5. It is TSI's regularly-conducted business practice to incorporate prior servicers' loan records into the system of record it maintains on [NCSLT's] behalf . . . . I am familiar with the process by which TSI receives access to loan records from [NCSLT's] prior servicers and incorporates those records into TSI's system of record.

6. AES[,] as the prior servicer of the educational loan, began servicing the educational loan upon the first disbursement and continued to service the educational loan until it was charged-off. Upon charge-off, the loan records were transmitted to and incorporated within the records of TSI (or its predecessor), as part of its regularly-conducted business practice. . . .

7. I am familiar with the process by which TSI and AES, on behalf of [NCSLT], each receives loan records from the prior

servicer or loan originator, including loan origination documents and data recording the electronic transactions pertaining to the loans. . . . It is TSI's regularly-conducted business practice to incorporate these loan records into the system of record it maintains on [NCSLT]'s behalf.

8. Educational loan records that are within TSI's care, custody and control as Subservicer for [NCSLT], including records entered and maintained by AES . . .were created, compiled or recorded, and kept as part of regularly conducted business activity at or near the time of the event recorded. The loan records were created, compiled or recorded from information transmitted by a person with personal knowledge of such event who had a business duty to report it, from information transmitted by a person with personal knowledge of such event. Such records are created, kept, maintained, accessed and relied upon in the course of ordinary and regularly conducted business activity.

* * * * *

10. . . . [Smith] obtained an educational loan with [Bank One] and funds were disbursed on 10/22/2004. [Smith's] educational loan was transferred, sold and assigned to National Collegiate Funding, LLC, on 2/23/2005 for valuable consideration, along with other educational loans ("Loan Pool . . . . Attached [ ] as Exhibit "C" is a true and correct copy of the Pool Supplement and a redacted excerpt of the Schedule of the Loan Pool . . . showing that [Smith's] loan was part of the Loan Pool.

11. On 2/23/2005, National Collegiate Funding, LLC transferred, sold and assigned the Loan Pool, including [Smith's] educational loan [ ] to [NCSLT] for valuable consideration . . . .

Appellant's App. Vol. II pp. 47-50 (citations omitted).

[13]  Unlike the deficient affidavit that NCSLT tendered in *Holmes*, the instant affidavit demonstrated, from a source and circumstances that did not indicate a lack of trustworthiness, that: (1) the business records were made at, near the time, or from information transmitted by a person with knowledge; (2) the business records were kept in the course of regularly conducted activities of Bank One and/or NCSLT; and (3) the making of the business records was a regular practice of the business activities of Bank One, NCSLT, and their loan servicers and subservicers. *See* Ind. R. Evid. 803(6). NCSLT's designated materials also established the manner in which Smith's Bank One educational loan was transferred to NCSLT; and that Jefferis was familiar with the regular business practices or recordkeeping of NCSLT's subservicer, TSI, as well as Bank One's servicer, AES, regarding the transfer of pooled loans and, therefore, could testify as to the reliability and authenticity of those documents.

[14]  For the foregoing reasons, the instant affidavit and attached documentation satisfied the requirements of Evidence Rule 803(6) and were properly admitted as business records.

## II. Ownership and Right to Collect

[15]  Smith also argues that the existence of a genuine issue of material fact precluded entry of summary judgment in NCSLT's favor because "NCSLT failed to prove that it is the owner of Smith's old Bank One account[.]" Smith's Br. p. 13. We cannot agree. NCSLT designated materials that demonstrate that: (1) Bank One transferred, assigned, or sold a bundle of educational loans to The National Collegiate Funding, LLC, pursuant to the Pool Supplement

agreement; (2) the bundle of educational loans incorporated loans that originated under Bank One's Education One program, which included Smith's Bank One educational loan; and (3) The National Collegiate Funding, LLC sold the same bundle of educational loans to NCSLT, pursuant to the Deposit and Sale Agreement. Accordingly, the trial court properly found that no genuine issue of material fact existed regarding NCSLT's ownership of and right to collect regarding Smith's defaulted educational loan; and that NCSLT was entitled to judgment as a matter of law.

## Conclusion

[16] The trial court properly admitted NCSLT's designated materials. No genuine issue of material fact existed regarding NCSLT's ownership of and right to collect regarding Smith's defaulted educational loan; thus, the trial court properly entered summary judgment in NCSLT's favor, and NCSLT is entitled to judgment as a matter of law.

[17] Affirmed.

Riley, J., and Mathias, J., concur.