

FILED

Dec 10 2018, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Chris E. Harkins
Bunker Hill, Indiana

ATTORNEYS FOR APPELLEE:
SHANNON WESTMEYER

Scott E. Andres
Charles J. Maiers
Due Doyle Fanning & Alderfer,
LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:
JON NIKLAS

Michelle L. Burden
Garvey, Shearer, Nordstrom, PSC
Fort Mitchell, Kentucky

ATTORNEY FOR APPELLEE:
ANGIE HARKINS

Nicole A. Mitchell
Freund, Freeze & Arnold
West Chester, Ohio

ATTORNEY FOR APPELLEE:
JANET L. HARKINS

Alan R. Trenz
Trenz & Knabe Co., LPA
Harrison, Ohio

# IN THE
# COURT OF APPEALS OF INDIANA

| Chris E. Harkins, | December 10, 2018 |
|---|---|
| *Appellant-Plaintiff,* | Court of Appeals Case No. 15A01-1703-CT-530 |
| v. | Appeal from the Dearborn Superior Court |
| Shannon Westmeyer, Jon Niklas, Angie Harkins, and Janet Harkins, | The Honorable Sally McLaughlin, Judge |
| *Appellees-Defendants.* | Trial Court Cause No. 15D02-1510-CT-038 |

**Tavitas, Judge.**

# Case Summary

Chris E. Harkins ("Harkins"), pro se, appeals the trial court's grant of summary judgment in favor of Shannon Westmeyer, Jon Niklas, Angie Harkins ("Angie"), and Janet Harkins ("Janet"). We affirm.

# Issues

Harkins raises two issues on appeal, which we restate as:

I. Whether the trial court erred in striking Harkins' response materials as untimely filed.

II. Whether the trial court erred in granting summary judgment in favor of Westmeyer, Niklas, Angie, and Janet.

## Facts

[3] The parties involved in this case are relatives, with the exception of Niklas. Harkins and Westmeyer are siblings. Angie is Harkins' and Westmeyer's cousin. Angie's mother, Janet, is Harkins' and Westmeyer's aunt.

[4] In April 2012, Harkins moved in with his and Westmeyer's parents, James and Cheryl Harkins (the "Parents"). While living in the Parents' home, Harkins obtained access to the Parents' personal financial records. Harkins subsequently moved out of the Parents' home and into an apartment ("the Apartment") located in Aurora, Indiana. Niklas was Harkins' landlord. Harkins' ex-wife, Dawn Harkins ("Dawn"), had a key to the Apartment.

[5] Using the Parents' financial information, Harkins (1) forged checks on the Parents' accounts; (2) cashed the checks and deposited the proceeds into bank accounts in Harkins' name; (3) fraudulently added himself as an authorized user on the Parents' existing credit accounts; (4) rerouted the Parents' credit card statements to the Apartment; and (5) made unauthorized credit card purchases in excess of $37,000 on the Parents' credit cards. Harkins also stole and pawned multiple pieces of the Parents' jewelry. Harkins sold many of the items he purchased with the Parents' credit cards "for gambling funds." *Harkins v. State,* No. 15A01-1412-CR-553, slip op. at 4 (Ind. Ct. App. Nov. 2, 2015).

[6] Harkins was arrested on June 3, 2014. After Harkins' arrest, Harkins authorized Dawn to enter the Apartment and to retrieve personal items belonging to Harkins' and Dawn's son. On June 4, 2014, Westmeyer, Angie,

and Janet accompanied Dawn to the Apartment. It is undisputed that Dawn unlocked the Apartment with her key and granted Westmeyer, Angie, and Janet access to the Apartment. Harkins contends that Westmeyer, Angie, and Janet removed and disposed of valuable items of Harkins' personal property. Westmeyer, Angie, and Janet maintain that they removed only personal property items and furniture that belonged to the Parents or to other family members.

[7] On August 6, 2014, the State charged Harkins with various offenses and with being a habitual offender. After a jury trial, Harkins was convicted of five counts of forgery, Class C felonies; two counts of identity deception, Class D felonies; two counts of credit card fraud, Class D felonies; one count of deception, a Class A misdemeanor; and of being a habitual offender. Harkins was sentenced to a twenty-two-year term in the Department of Correction and is presently incarcerated in the Miami Correctional Facility in Bunker Hill, Indiana.[1]

[8] On October 9, 2015, Harkins filed a pro se suit for damages against Westmeyer, Angie, Janet, and Niklas. In Count I, which Harkins titled "[w]rongful/[f]raudulent conversion," Harkins alleged that Westmeyer: (1) enlisted Niklas' assistance to gain entry to the Apartment; (2) recruited Janet

---

[1] On November 2, 2015, we affirmed Harkins' convictions on direct appeal. *Harkins,* No. 15A01-1412-CR-553, slip op. at 20.

and Angie; (3) removed and transported Harkins' personal property to a local Goodwill donation site; and (4) maliciously and intentionally deprived Harkins of his property without communicating the disposition of the items. Appellee Westmeyer's App. Vol. II pp. 22-23.

In Count II, Harkins alleged that Westmeyer drove his truck or directed his truck to be driven to a location at which the keys and keyless entry remote were locked inside. Harkins sought damages for the costs of replacing and repairing "a window [that] was . . . broken to gain access into the truck." *Id*. at 24.

In Count III, Harkins alleged that, despite Niklas' knowledge that Niklas' tenant, Harkins, was incarcerated, Niklas exercised unauthorized control over Harkins' property and acted "willfully, intentionally and negligently" in "opening or making accessible the apartment" to Westmeyer, Angie, and Janet, without providing notice to Harkins as required by law. *Id*. at 26.

In Count IV, Harkins alleged that Westmeyer "acted with the specific and purposeful intentions to inflict emotional distress" when Westmeyer removed Harkins' personal property and "acted with malicious intent to cause [Harkins] to suffer emotionally . . . on the belief that [Harkins] had wronged their parents." *Id*.

In Count V, Harkins alleged that Janet and Angie aided Westmeyer in exercising unauthorized control over his property "with the intent to forever deprive" Harkins thereof. *Id*. at 28.

## I. Motions for Summary Judgment

### A. Westmeyer

On March 2, 2016, Westmeyer served Harkins with requests for admissions ("RFAs"), which included the following:

> 15.     Shannon Westmeyer did not remove any of your personal property from your apartment.

> 16.     Any property that Shannon Westmeyer removed from your apartment did not belong to you.

Appellee Westmeyer's App. Vol. II pp. 3-4. Harkins did not respond to the RFAs. Westmeyer also served Harkins with interrogatories. In Harkins' answers to Westmeyer's interrogatories, Harkins admitted that, after his arrest, Harkins granted Dawn permission to enter the Apartment and to retrieve items belonging to their son.

On June 2, 2016, Westmeyer, by counsel, filed a motion for summary judgment. On July 18, 2016, the trial court granted Harkins "an extension of 45 days from the date of th[e] order to respond to [ ]Westmeyer's Motion for Summary Judgment"; accordingly, Harkins' response to Westmeyer's motion for summary judgment was due on September 1, 2016. On September 6, 2016, Harkins filed his response in opposition to Westmeyer's motion for summary judgment, including Harkins' own affidavit, a subpoena request regarding Dawn, and Harkins' designation of evidence (collectively, "response

materials").[2] Harkins also designated the appellees' answers to his complaint, the appellees' affidavits, and the other documents filed by Westmeyer, Angie, and Janet.

## B. Angie's Motion for Summary Judgment

[15] On July 5, 2016, Angie filed a motion for summary judgment. In support, Angie designated an affidavit and incorporated all materials designated by Westmeyer in support of Westmeyer's motion for summary judgment. Harkins moved for additional time in which to respond. On September 6, 2016, the trial court granted Harkins an additional thirty days from the date of its order to respond to Angie's motion for summary judgment; accordingly, Harkins' response to Angie's motion for summary judgment was due on October 6, 2016. Harkins did not file a response to Angie's motion for summary judgment.

## C. Janet's Motion for Summary Judgment

[16] On June 24, 2016, Janet filed a motion for summary judgment and designated an affidavit in support. Harkins filed a motion for additional time to respond. On September 6, 2016, the trial court granted Harkins an additional thirty days to respond; accordingly, Harkins' response to Janet's motion for summary judgment was due on October 6, 2016. Harkins did not file a response.

---

[2] On appeal, Harkins has supplied us with his two-page list of designated materials; however, he has not included the response materials in his appellant's appendix.

## D. Niklas' Motion for Summary Judgment

On October 20, 2016, Niklas filed a motion for summary judgment. Niklas designated Harkins' responses to Westmeyer's RFAs as well as all materials designated by Westmeyer, Janet, and Angie. Harkins filed a motion for additional time to respond. On November 29, 2016, the trial court granted Harkins an additional thirty days to respond; accordingly, Harkins' responsive filing was due on December 29, 2016. Harkins did not file a response.

## II. Summary Judgment Hearings and Rulings

On October 7, 2016, the trial court conducted a hearing on the motions for summary judgment filed by Westmeyer, Angie, and Janet. Westmeyer, Angie, and Janet moved, pursuant to Indiana Trial Rule 56(C), to strike, as untimely, Harkins' response materials to Westmeyer's motion for summary judgment. The trial court granted the motion and ordered Harkins' response materials and other filings stricken.

On December 12, 2016, the trial court entered summary judgment in favor of Westmeyer, Angie, and Janet. In its order, the trial court stated:

> * * * * * Ind. T.R. 56 states that "an adverse party shall have thirty days after service of the motion to serve a response and any opposing affidavits." *Id.* Additionally, it instructs "at the time of filing the motion or response, a party shall designate to the Court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters in which it relies for purposes of the motion." *Id.* In *Allstate Insurance Co. v. Hatfield*, 28 N.E.3d 247 (Ind. Ct. App. 2015), the Court of Appeals found that where a Plaintiff did not

respond to a Motion for Summary Judgment until 35 days after the motion was filed nor requested an extension of time, that the Defendant's Motion to Strike any late filed responses should be granted.

Here, [Harkins] failed to respond timely and [Westmeyer's, Angie's, and Janet's] evidence contains no genuine issue of material fact and on this basis summary judgment should be denied [sic[3]].

> WHEREFORE, the Court finds that [Harkins'] submissions and testimony in response to [the] Motions For Summary Judgment [filed by Westmeyer, Angie, and Janet] shall be stricken and summary judgment shall be granted in favor of the Defendants, Shannon Westmeyer, Janet Harkins and Angie Harkins.

Appellant's App. Vol. II pp. 17-18.

[20] On January 13, 2017, the trial court conducted a hearing on Niklas' motion for summary judgment. On February 13, 2017, the trial court entered summary judgment in favor of Niklas on virtually identical grounds as the trial court cited regarding the motions for summary judgment filed by Westmeyer, Janet, and Angie. Harkins now appeals.

## Analysis

[21] Harkins appeals the grant of summary judgment in favor of Westmeyer, Angie, Janet, and Niklas. Summary judgment is appropriate only when the moving

---

[3] Upon a showing that no genuine issues of material fact existed, the appellees' motions for summary judgment would be granted, not denied.

party shows there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Estate of Harris by Harris*, 99 N.E.3d 625, 629 (Ind. 2018), *reh'g denied*; *see also* Ind. Trial Rule 56(C). Once that showing is made, the burden shifts to the nonmoving party to designate appropriate evidence to demonstrate the actual existence of a genuine issue of material fact. *Schoettmer v. Wright*, 992 N.E.2d 702, 705-06 (Ind. 2013). When ruling on the motion, the trial court construes all evidence and resolves all doubts in favor of the non-moving party. *Id.* at 706. We review the trial court's ruling on a motion for summary judgment de novo, and we take "care to ensure that no party is denied his day in court." *Id.* "We limit our review to the materials designated at the trial level." *Gunderson v. State, Indiana Dep't of Nat. Res.*, 90 N.E.3d 1171, 1175 (Ind. 2018).

[22]     An "adverse party shall have thirty (30) days after service of the motion to serve a response and any opposing affidavits." T.R. 56(C). If opposing the motion, the adverse party is to "designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for the purposes of the motion." When a non-moving party does not respond to a summary judgment motion within thirty days, the trial court cannot consider summary judgment filings that party subsequently makes. While a party who does not respond to a motion for summary judgment may be limited to the facts established by the movant's submissions, such failure to respond does not preclude argument of the relevant law on appeal.

*Quirk v. Delaware Cty.*, 91 N.E.3d 1008, 1014 (Ind. Ct. App. 2018) (internal citations omitted).

[23] A non-moving party's failure to file a cross-motion for summary judgment, to file a brief in opposition to summary judgment, or to designate any evidence to demonstrate the existence of a genuine issue of material fact does not entitle the movant to summary judgment by default. *Larson v. Karagan,* 979 N.E.2d 655, 659 (Ind. Ct. App. 2012). Nor is a trial court required to grant an unopposed motion for summary judgment. *Id.*

## I.    Striking of Response Materials

[24] Harkins argues that the trial court erred in failing to apply the prison mailbox rule and in striking Harkins' response materials as untimely filed.

[25] In 2010, our supreme court expressly adopted the "prison mailbox rule" as a mechanism to gauge the timeliness of court filings made by incarcerated persons. *Dowell v. State,* 922 N.E.2d 605, 607 (Ind. 2010) (quoting *Houston v. Lack,* 487 U.S. 266, 108 S. Ct. 2379 (1988)). The "prison mailbox rule" recognizes that *pro se* "prisoners cannot personally travel to the courthouse to see that the notice is stamped 'filed' or to establish the date on which the court received the notice." *Id*.

[26] The prison mailbox rule provides that "a pro se incarcerated litigant who delivers a [document] to prison officials for mailing on or before its due date accomplishes a timely filing"; and the document is deemed "filed" on the date of submission to prison officials. *Id*. at 607. A pro se prisoner must provide

"reasonable, legitimate, and verifiable documentation supporting a claim that a document was timely submitted to prison officials for mailing." *Id.* at 608. "Where a prisoner's proof is lacking, however, the opposite result obtains." *Id*.

Here, Harkins argues that he "handed his legal mail to the facility personnel on September 6, 2016 for mailing to the court and the parties to the action." Appellant's Br. pp. 9-10. Harkins also "obtained a letterhead statement from the facility administration explaining the reason the mail containing the [response materials] was late in reaching the court." *Id*. at 9 (citing Appellant's App. Vol. II p. 48). The "letterhead statement," dated September 23, 2016, is captioned "Misplaced Legal Mail" and purports to be written by Miami Correctional Facility library supervisor, Jessica Rhodes. The letter states:

> Offender Harkins, Chris DDC#253607 provided in accordance with facility policy five (5) large envelopes containing legal documents and marked as "legal Mail" on Tuesday September 6, 2016 for mailing. The envelopes were handed to the Law Librarian responsible for overseeing the logging of the addresses of the outgoing legal mail. A remittance slip was attached and properly filled out by Harkins requesting first class postage be applied to the mail and charged against his inmate trust account. A security signal was called at appox [sic] 1500hrs on Tuesday September 6, 2016 and the library was then cleared of all personnel. This triggered a chain of events causing Offender Harkins's mail amongst others to be left unintentionally in a postal mailbox that went unnoticed until Thursday September 22, 2016. Offender Harkins has requested by way of emergency grievance that the Court and his adversary [sic] be made aware that the attempted mailing failed by no fault of the offender.

Appellant's App. Vol. II p. 48. Harkins' responsive materials also bear a certificate of service, dated September 6, 2016.

[28] Notably, Ms. Rhodes' letter is not a sworn affidavit submitted under penalty of perjury; however, we will give Harkins the benefit of the doubt here and find that "the evidence taken as a whole create[s] a presumption that Harkins functionally filed his documents" on September 6, 2016. *See Dowell,* 922 N.E.2d at 608. Accordingly, we agree with Harkins that, by application of the prison mailbox rule, Harkins' response materials, which were due to be filed with the trial court on September 1, 2016, were functionally "filed" on September 6, 2016, when he delivered them to prison personnel.

[29] Next, Harkins argues that his September 6, 2016 filing, which was due to the trial court on September 1, 2016, was timely because (1) Harkins received by mail the trial court's order granting Harkins a forty-five-day extension of time to respond to Westmeyer; and (2) pursuant to Indiana Trial Rule 6(E), Harkins was, therefore, entitled to an automatic three-day extension. Specifically, Harkins argues that, applying the Rule 6(E) three-day extension to the September 1, 2016 deadline, Harkins' responsive deadline was Sunday, September 4, 2016; the following day, September 5, 2016, was the Labor Day holiday; and, therefore, Harkins' response materials were timely filed on September 6, 2016. *See* Trial Rule 6(A). We cannot agree.

[30] Rule 6(E) states,

> Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by mail, three days shall be added to the prescribed period.

Ind. T.R. 6(E).

[31] In *McDillon v. Northern Indiana Public Service Co.,* 841 N.E.2d 1148, 1151 (Ind. 2006), our supreme court considered "whether [Rule 6(E)] properly applies to extend the commencement of deadlines following all court orders, including those deadlines triggered by the entry of an order or happening of an event, or only by those deadlines that are triggered by service of a court order."

[32] Our supreme court's unequivocal answer to this question is that not all court orders receive the benefit of the Rule 6(E) automatic three-day extension. As the *McDillon* court held, Rule 6(E) applies:

> only when a party has a right or is required to do some act within a prescribed period after the service of a notice or other paper. *It does not apply to extend periods that are triggered by the mere entry of the order or the happening of an event other than the service of notice or other paper.*

841 N.E.2d at 1152 (emphasis supplied).

[33] In its analysis, the *McDillon* court set out various examples of time periods to which the Rule 6(E) automatic three-day extension "would apply," *id*. at 1151:

> Ind. Trial Rule 6(C) (responsive pleading required to be served "within 20 days *after the service* of the prior pleading"); Ind. Trial

Rule 33(C) (responses to interrogatories due "not less than thirty (30) days *after service* thereof"); Ind. Trial Rule 56(C) (adverse party has "thirty days *after service* of the motion to serve a response and any opposing affidavits").

*Id.* (quoting *Annon II, Inc. v. Rill,* 597 N.E.2d 320, 324-25 (Ind. Ct. App. 1992)).

[34] In each of the examples cited by the *McDillon* court in which Rule 6(E) was used to extend the deadline for certain filings, the deadline was triggered by service or notice—not, as here, "from the date of [an] order" by the trial court. This small difference in language is important. For example, *McDillon* cites *Baker v. Sihsmann,* 315 N.E.2d 386, 387 (Ind. Ct. App. 1974), to demonstrate allowance of the three-day extension when the response period began "the day after *receipt* of the summons." *McDillon*, 841 N.E.2d at 1151 (emphasis added). *McDillon* also cites *Yaksich v. Gastevich,* 440 N.E.2d 1138, 1139 n.2 (Ind. Ct. App. 1982) as an example, which allowed the three-day extension when the period was triggered "after *notice* of the order." *McDillon*, 841 N.E.2d at 1152 (emphasis added). These examples are consistent with the *McDillon* court's conclusion that Rule 6(E) applies when the deadline to respond is triggered by service or notice to a party and not, as here, when the deadline is triggered by the date of an order.

[35] Stated differently, there are essentially two requirements for the three-day extension to apply. First, the time period for a filing must be triggered by service of a paper. Second, service to the individual must be completed by mail. In this case, while Harkins was in fact served by mail, the first requirement is

not met. The order granting Harkins' motion for extension of time granted Harkins "an extension of 45 days *from the date of this order* to respond to Defendant Shannon Westmeyer's Motion for Summary Judgment."[4] Appellant's App. p. 27 (emphasis added). Harkins' forty-five-day extension period was not a prescribed period after *service* but, rather, was a period that was merely "triggered by" the entry of the trial court's order extending Harkins' time to respond to Westmeyer. *See McDillon,* 841 N.E.2d at 1152.

[36] Guided by *McDillon*'s explicit holding, we conclude that the forty-five-day enlargement period does not receive the benefit of Rule 6(E) because the period was merely triggered by the trial court's entry of the enlargement order. A finding otherwise would afford *all* court orders the benefit of Rule 6(E), which would contravene the *McDillon* court's explicit holding that Rule 6(E) properly applies only to extend the commencement of deadlines that are triggered by service.

[37] For these reasons, we find that the automatic three-day extension pursuant to Rule 6(E) does not apply to extend Harkins' deadline from September 1, 2016. The trial court, therefore, did not err in deeming Harkins' September 6, 2016

---

[4] For our purposes, the time period to be analyzed here is not Harkins' initial time period to respond following service of Westmeyer's motion for summary judgment. Rule 6(E) "would apply" to that period, as that period was triggered by service upon Harkins of Westmeyer's motion for summary judgment. *See* 841 N.E.2d at 1151. Rather, the time period at issue here is the ensuing forty-five-day enlargement window.

response materials to be untimely filed and ordering Harkins' response materials stricken.

## II. Motions for Summary Judgment

### A. Westmeyer

[38] Lastly, we turn to Harkins' contentions that genuine issues of material fact precluded entry of summary judgment in favor of Westmeyer, Angie, Janet, and Niklas. We begin with Harkins' claims of tortious conversion and intentional infliction of emotional distress as to Westmeyer. Harkins contends that Westmeyer exercised unauthorized control of Harkins' property and, thereby, caused Harkins to suffer emotional distress.

[39] Tortious conversion is appropriating another's personal property for the tortfeasor's own use and benefit, in exclusion and defiance of the owner's rights, and under an inconsistent claim of title. *Campbell v. Criterion Grp.,* 621 N.E.2d 342, 346 (Ind. Ct. App. 1993).

[40] Intentional infliction of emotional distress is "committed by 'one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another.'" *Board of Trustees of Purdue University v. Eisenstein,* 87 N.E.3d 481, 500 (Ind. Ct. App. 2017), *trans. denied.*

> The elements of intentional infliction of emotional distress are that a defendant (1) engages in extreme and outrageous conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another. "The requirements to prove this tort are 'rigorous.'" "Intentional infliction of emotional distress is found

where conduct exceeds all bounds usually tolerated by a decent society and causes mental distress of a very serious kind." "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." In the appropriate case, an intentional infliction of emotional distress claim may be disposed of by summary judgment.

*Id*. at 500-01 (internal citations omitted).

[41] Pursuant to Indiana Trial Rule 36(A), a party may serve upon any other party a written request for the admission of the truth of any matters covered under Indiana Trial Rule 26(B), which governs the scope of discovery. "The matter is admitted unless, within a period designated in the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney." Ind. Trial Rule 36(A).

[42] Matters admitted are deemed conclusively established, unless the trial court permits withdrawal or amendment of the admission. Ind. Trial Rule 36(B); *Gen. Motors Corp., Chevrolet Motor Div. v. Aetna Cas. & Sur. Co.,* 573 N.E.2d 885, 888-89 (Ind. 1991). When a party fails to timely answer requests for admission and the result of such failure is the admission of all facts material to the lawsuit, nothing remains to litigate, and the requesting party is entitled to summary judgment. *Bryant v. County Council of Lake County,* 720 N.E.2d 1, 6 (Ind. Ct. App. 1999), *trans. denied.*

[43]     In Westmeyer's motion for summary judgment, Westmeyer designated her RFAs to Harkins, which stated:

> 15.     Shannon Westmeyer did not remove any of your personal property from your apartment.
>
> 16.     Any property that Shannon Westmeyer removed from your apartment did not belong to you.

Westmeyer's App. Vol. II pp. 3-4. Harkins never responded to Westmeyer's RFAs, and they were deemed admitted.

[44]     Additionally, to demonstrate the absence of a genuine issue of material fact as to whether Westmeyer committed conversion, Westmeyer designated an affidavit in which she averred that: (1) she removed only "paperwork . . . that rightfully belonged to" the Parents, including "bank statements, credit card statement, and tax returns"; "[a] printer/scanner/fax machine contain[ing] sensitive information concerning" the Parents because "Janet Harkins, who was there with [Westmeyer], identified it as one that [Janet] personally gave to" the Parents; and "a piece of art work" that Harkins had offered to give Westmeyer before the above-mentioned events; and (2) Westmeyer did not drive Harkins' 2001 Ford F-150 pickup truck or lock the truck keys inside the pickup truck. Westmeyer's App. pp. 73-74.

[45]     Further, as to Harkins' claim of intentional infliction of emotional distress, which was predicated upon the alleged tortious conversion of Harkins' personal property, Westmeyer averred that, after Harkins was arrested for defrauding the

Parents, Westmeyer merely retrieved and returned to the Parents items that the Parents owned and/or purchased. This is not outrageous conduct that would support an intentional infliction of emotional distress claim.

[46] By Harkins' failure to respond to Westmeyer's RFAs, the matters asserted in those RFAs were deemed admitted and conclusively established. *See id.* Harkins, thereby, admitted that Westmeyer did not remove Harkins' personal property from the Apartment. As to Westmeyer, all issues dispositive of Harkins' conversion claim and the related emotional distress claim are conclusively established by operation of Trial Rule 36, and no issues remain to be litigated.

[47] Westmeyer established the absence of any genuine issues of material fact as to whether she committed tortious conversion or intentional infliction of emotional distress. Westmeyer also established her entitlement to judgment as a matter of law. Accordingly, the trial court did not err in entering summary judgment in Westmeyer's favor.

## *B. Angie*

[48] Next, Harkins argues that genuine issues of material fact precluded entry of summary judgment in favor of Angie on Harkins' claims of tortious conversion and infliction of emotional distress.

[49] As to Harkins' tortious conversion claim, Angie designated her affidavit in which she averred that she only retrieved items that were purchased by or belonged to the Parents from the Apartment, including clothing, towels, "quilts

and knick-knacks"; items belonging to Dawn's and Harkins' son; and an heirloom desk that belonged to Harkins' maternal grandmother. Appellee Angie's Br. p. 13. Angie averred that she delivered all of the items that she removed from the Apartment to the Parents and that Angie retained none of the items. Angie also denied that she drove Harkins' truck, locked his truck keys inside, or removed Harkins' paperwork, office equipment, or artwork.

[50] As to Harkins' claim of intentional infliction of emotional distress, Angie designated an affidavit in which Angie averred that, after Harkins was arrested for defrauding the Parents, Angie retrieved and returned to the Parents items from the Apartment that the Parents owned and/or purchased. This is not outrageous conduct that would support an intentional infliction of emotional distress claim.

[51] After Angie designated evidence to support her claim that no genuine issues of material fact existed regarding Harkins' claims of tortious conversion and intentional infliction of emotional distress, the burden shifted to Harkins to present contrary evidence showing an issue for the trial court. Harkins, however, failed to respond to Angie's motion for summary judgment and has not carried his burden. Accordingly, Angie is entitled to judgment as a matter of law.

[52] Because Harkins failed to demonstrate that genuine issues of material fact existed with regard to his claims of conversion and intentional infliction of emotional distress against Angie, and Angie showed that she is entitled to

judgment as a matter of law, we conclude that the trial court did not err in granting summary judgment in Angie's favor.

## C. Janet

[53] Next, Harkins argues that genuine issues of material fact precluded entry of summary judgment in favor of Janet on his claims of tortious conversion and infliction of emotional distress.

[54] In support of her motion for summary judgment, Janet designated her affidavit in which she averred that she "did not remove or retain any items taken from [Harkins'] apartment" and "only assist[ed] . . . in the sorting and recovery of property that Janet understood was not owned by Harkins." Appellee Janet's Br. p. 21; Janet's App. Vol. II p. 48. After Janet designated evidence to support her argument that no genuine issues of material fact existed and that Janet is entitled to judgment as a matter of law, the burden shifted to Harkins to present contrary evidence showing an issue for the trial court. Harkins failed to respond to Janet's motion for summary judgment and has not carried his burden.

[55] For reasons stated above as to Angie, we conclude that Harkins failed to demonstrate that genuine issues of material fact existed with regard to his claims of conversion and intentional infliction of emotional distress against Janet and that Janet has demonstrated she is entitled to judgment as a matter of law. The trial court did not err in entering summary judgment in Janet's favor.

### *D. Niklas*

[56] Harkins argues that genuine issues of material fact precluded entry of summary judgment in Niklas' favor. In Harkins' complaint, Harkins alleged that Niklas: (1) acted with deliberate indifference and culpable negligence in allowing Westmeyer, Angie, Janet, and Dawn to enter the Apartment, without notice to Harkins; and (2) lacked authority to grant anyone access to Harkins' Apartment.

[57] In Niklas' designated motion for summary judgment materials, Niklas averred that he did not unlock the Apartment; and that Dawn unlocked the Apartment with her own key. Niklas also designated Harkins' answers to Westmeyer's interrogatories, in which Harkins admitted that he granted Dawn permission to enter the Apartment after his arrest. Niklas' App. Vol. II p. 59. The burden then shifted to Harkins to present contrary evidence showing an issue for the trial court; however, Harkins failed to respond to Niklas' motion for summary judgment. Harkins failed to carry his burden of demonstrating that genuine issues of material fact existed with regard to Niklas' role in the removal of items from the Apartment; and, thus, Niklas has demonstrated that he is entitled to judgment as a matter of law. The trial court did not err in granting summary judgment in favor of Niklas.

## Conclusion

[58] No genuine issues of material fact exist as to Harkins' claims of conversion and infliction of emotional distress against Westmeyer, Angie, and Janet. Nor do

any genuine issues of material fact exist regarding Harkins' claims that Niklas acted with deliberate indifference and culpable negligence in facilitating the entry of Westmeyer, Angie, and Janet into the Apartment. We conclude that the trial court did not err in finding that Westmeyer, Angie, Janet, and Niklas were entitled to judgment as a matter of law and in granting summary judgment in their favor. We affirm.

[59] Affirmed.

[60] Brown, J., and Altice, J., concur.