ATTORNEYS FOR APPELLANT

Caren L. Pollack
Zachary J. Stock
Indianapolis, Indiana

ATTORNEY FOR APPELLEES

Timothy F. Devereux
Indianapolis, Indiana



FILED

Jan 24 2019, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Crawfordsville Town & Country Home Center, Inc., *Appellant-Defendant,* <br><br> v. <br><br> Odilon Elias Cordova, Jamie Busse, and Do It Best Corp, *Appellees-Plaintiffs/Defendant.* | January 24, 2019 <br><br> Court of Appeals Case No. 18A-CT-314 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable David J. Avery, Judge <br><br> Trial Court Cause No. 02D09-1512-CT-543 |

**Tavitas, Judge.**

## Case Summary

[1]     Crawfordsville Town & Country Home Center, Inc. ("Town & Country") appeals the trial court's denial of its motion for summary judgment in proceedings brought by Odilon Elias Cordova ("Cordova") and Jamie Busse ("Busse"). We reverse and remand.

# Issue

Town & Country raises two issues. We find the following issue dispositive: Whether the trial court properly denied Town & Country's motion for summary judgment based on lack of duty.

# Facts

The parties' designated evidence demonstrates that, in August 2014, the owners of a Mexican restaurant in Crawfordsville hired Rogelio Barcelata to paint the rear exterior wall of the restaurant. Barcelata asked Cordova and Rutelio Gonzales to assist and split the payment for the work. To remove the old paint, the men decided to rent a pressure washer and an aerial lift. Barcelata and Cordova[1] went to Town & Country, where Corey Perigo, the rental department manager, assisted them.

Barcelata, Gonzales, and Cordova speak limited English. Barcelata and Cordova testified in depositions that they cannot read English. Perigo testified in a deposition that Barcelata spoke fluent English and that he did not know if the other men spoke English. Cordova is married to Busse, and they communicate in English.

---

[1] In a deposition, Corey Perigo testified that three men were at Town & Country. Cordova testified that Gonzales stayed in the van as Cordova and Barcelata went inside.

[5]     Perigo rented the equipment to Barcelata.  According to Perigo, he explained the operation of the aerial lift to Barcelata.  According to Cordova, however, Perigo explained how to use the aerial lift to Cordova, who spoke more English than Barcelata.  Perigo also showed Cordova where the operator's manual was located.  The operator's manual and the warning labels on the aerial lift are all written in English.  Cordova did not ask for the instructions or safety information to be provided in Spanish.  Perigo spent fifteen to twenty minutes giving an operation and safety orientation.  Perigo conceded, however, most of that time was spent on operation of the aerial lift, not safety.  Perigo did not review the operator's manual with Cordova or Barcelata.

[6]     The aerial lift had multiple warning labels with diagrams placed on the aerial lift by the manufacturer that directed users not to use the lift within ten feet of a high-voltage line.  *See* Figure 1 (Appellant's App. Vol. II p. 135); Figure 2 (Appellant's App. Vol. II p. 136).  Perigo testified in his deposition that he explained the electrocution warning sticker and that he said "to stay away from the power lines at least 10 feet."  Appellant's App. Vol. III p. 151.  Barcelata, however, testified that Perigo did not point out the warning labels.

*Figure 1*



*Figure 2*



[7]     The operator's manual further directed operators to avoid power lines. *See* Figure 3 (Appellant's App. Vol. II p. 239). The operator's manual provided: "Inexperienced users should receive instruction by a qualified instructor before attempting to operate or maintain the aerial work platform." Appellant's App. Vol. II p. 237. Perigo is not "certified" to "provide training or instruction" on the aerial lift. Appellant's App. Vol. III p. 151.

[8]     The men then took the aerial lift to the jobsite. After they arrived at the jobsite, however, the men had problems operating the aerial lift. Cordova called Perigo, who came to the jobsite and corrected the problem. There is a dispute as to whether the aerial lift was in the parking lot or in position next to the building when Perigo arrived. Perigo testified that, when he arrived, the equipment was parked in the parking lot away from the restaurant. According

to Perigo, the men did not explain what they were doing with the aerial lift, and they told Perigo that they needed a "heavier duty pressure washer." *Id.* at 152.

[9] Cordova, however, stated that, when he and Barcelata arrived at the site with the aerial lift, they immediately placed the aerial lift next to the restaurant's back wall and leveled it. Barcelata also testified that the aerial lift had been placed "where we were going to work" and that Cordova had leveled it before discovering that it would not work; the men placed the aerial lift between the back wall of the building and power lines that were a few feet away. *Id.* at 159.

*Figure 3*

HAULOTTE GROUP                                                1 SAFETY

**DURING OPERATION**

Ensure the following general safety precautions are followed while operating the aerial work platform:

**ALWAYS** position away from power lines, this ensures that no part of the aerial work platform accidentally reaches into an unsafe area. This includes full extension of the telescoping boom through 700° Non-Continuous rotation.

⚠ **DANGER**

This aerial work platform is **NOT** insulated for use near electrical power lines and **DOES NOT** provide protection from contact with or close proximity to any electrically charged conductor. Operator must maintain safe clearances at all times (10 ft (3.05m) minimum) and must always allow for Platform movement due to gusty winds. Always contact power company before working near power lines. Assume every power line is live. Power lines can be blown by the wind.

Refer to Table 1-1 for minimum safe approach distances between the machine and electrical power lines.

| TABLE 1-1. MINIMUM SAFE APPROACH DISTANCES | | |
|---|---|---|
| Voltage Range (Phase to Phase) | Minimum Safe Approach Distance | |
| | (Feet) | (Meters) |
| 0 to 300V | Avoid Contact | |
| Over 300V to 50KV | 10 | 3.05 |
| Over 50KV to 200KV | 15 | 4.60 |
| Over 200KV to 350KV | 20 | 6.10 |
| Over 350KV to 500KV | 25 | 7.62 |
| Over 500KV to 750KV | 35 | 10.67 |
| Over 750KV to 1000KV | 45 | 13.72 |

**ALWAYS** check with local electrical authorities regarding any local requirements which may differ from those shown in Table 1-1

**ALWAYS** keep away from an aerial work platform that is exposed to electrically charged power lines. If the aerial work platform comes in contact with electrically charged power lines, **NEVER** touch or operate the aerial work platform until power lines are shut off.

**ALWAYS** operate only on a firm and level surface. **NEVER** operate on surfaces that do not support the aerial work platform with its rated load capacity, or on surfaces that do not support force exerted by the outriggers during aerial work platform operation. Operate only on surfaces that can support a pressure of 25 psi (1.8 kg/cm²) to ensure safe operation.

**ALWAYS** keep personnel away from potential pinch and shear points and from potential crush hazards as indicated by decals attached to the aerial work platform.

**ALWAYS** keep the safety bar lowered (closed) unless personnel are entering or exiting the work platform.

According to Cordova and Barcelata, the aerial lift was already in position when Perigo arrived to fix it. Barcelata testified that he assumed Perigo "would have said something" if the aerial lift could not be operated in its location when Perigo repaired the aerial lift and saw its position. *Id.* at 167. Cordova testified that Perigo saw their small pressure washer and told Cordova that it was too small for the job. Perigo recommended that the men use a more powerful pressure washer, and the men followed Perigo back to Town & Country to rent a different pressure washer.

Barcelata was aware that "nobody should get close to electric cable[s]," but he admitted he thought they had enough room to do the job without touching the power lines. *Id.* at 161. Barcelata understood that they needed to stay away from the power lines. Barcelata was not concerned about using water near the power lines because they "were spraying the wall, not the lines." Appellant's App. Vol. II p. 81. Cordova testified that he knew the power lines were "bad" and that they tried to stay away from the lines. Appellant's App. Vol. III p. 178. Cordova also testified, however, that they were not paying attention to the power lines while they were in the basket because they "were working." *Id.*

The next day, Cordova and Gonzales were in the basket of the aerial lift using the power washer. Cordova was at the controls, and Gonzales was spraying water to remove old paint from the wall. The aerial lift was positioned between the building and power lines. The aerial lift was less than ten feet away from the power lines. According to Cordova, the aerial lift did not touch the power

lines.  Cordova, however, was electrocuted and sustained severe injuries, including the amputation of his left hand.

[13]     Emergency personnel at the scene and Town & Country's corporate representative, John Whitecotton, testified that the aerial lift was less than ten feet away from the power lines.  *See* Appellant's App. Vol. III p. 187 (aerial lift was "within a foot of the power lines"); p. 194 (aerial lift was "approximately 2 feet from the energized power line"); p. 196 (aerial lift was "close to 2 feet" from the power lines); p. 200 (aerial lift was "within 6 inches of the power lines").  Whitecotton was asked in a deposition, "Is there any way that that lift could have been safely used to power wash that wall?"  *Id.* at 188.  Whitecotton responded, "No.  There's power lines within ten feet of there.  I actually believe the power lines are too low to the ground to begin with, and the pole's leaning toward the building."  *Id.*  Whitecotton also testified, "If we knew at the time that the customer was going to do something near power lines, and we're talking within 25 feet or less, we would say, you can't do that.  And if they say, we're going to do it anyway, we would refuse rental."  *Id.* at 181.

[14]     In December 2015, Cordova and his wife, Busse, filed a complaint for damages against Town & Country and Do It Best Corp. ("Do It Best") after Cordova was electrocuted and seriously injured in the aerial lift rented from Town & Country.  Cordova and Busse alleged that Town & Country and Do It Best were: (1) negligent in renting the aerial lift; (2) negligent for failing to provide sufficient warnings, training, and instructions; and (3) negligent because they knew or should have known that the aerial lift created an unreasonable risk of

harm when used in a manner reasonably foreseeable to Town & Country and Do It Best.

[15] Town & Country filed a motion for summary judgment and alleged that: (1) Town & Country did not have a duty to Cordova; (2) Town & Country's conduct was not the proximate cause of Cordova's injuries; and (3) Cordova's fault was greater than the fault of any other person who contributed to Cordova's damages. Cordova filed a response to Town & Country's motion for summary judgment and argued that, under Section 388 of the Restatement (Second) of Torts, Town & Country owed a duty to Cordova. Town & Country then filed a reply and additional designation of evidence.

[16] After a hearing, the trial court denied Town & Country's motion for summary judgment and issued the following order:[2]

> As to Town & Country's contention that no legal duty was breached, Town & Country cites *Ford Motor Co. v. Rushford*, 868 N.E.2d 806 (Ind. 2007) for the proposition that a retail merchant has no duty to provide additional warning of a danger to a buyer of a product being sold if the retailer passes on the adequate warnings of the danger provided by the manufacturer. In *Rushford*, the plaintiff was claiming that the defendant dealership had a duty to direct her to the airbag warnings in the manufacturer's owner's manual which had been provided to her by the dealership. The holding in *Rushford* does not alleviate the duty to warn users of dangers in the use of a product.

---

[2] The trial court granted Do It Best's motion for summary judgment.

Section 388 of the Restatement (Second) of Torts, adopted by our courts in Indiana, creates a duty on the supplier of a chattel to exercise reasonable care to inform anyone whom the supplier expects to use the chattel that "the chattel is or is likely to be dangerous for the use for which it is supplied", "has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition" and "to exercise reasonable care to inform [the user] of its dangerous condition or of the facts which make [the chattel] likely to be dangerous". The Court finds that this duty applied to Town & Country as the rental agent for the Lift in this case.

Town & Country also contends that it complied with its legal duty. Town & Country points to the warnings contained on the stickers on the Lift and the warnings contained in the owner's manual, a copy of which was given to Cordova and/or Barcelata and the verbal instructions and warnings that Perigo gave to Cordova at the time of the rental. However, Town & Country does not take into consideration (1) that Perigo testified that at the time of the rental at the Town & Country building he only spoke to Barcelata; (2) there is a question as to how well Barcelata and Cordova would have understood the language contained in the stickers or owner's manual or Perigo's verbal instructions which were in English and not in Spanish and while Cordova spoke and understood some degree of English, his primary language appears to have been Spanish and Barcelata's understanding of English was less than that of Cordova's; (3) in addition to the language issue, there is a question as to whether the warnings adequately warned Cordova that the danger arising from [] using the Lift in close proximity to power lines resulted not only from direct contact with a power line but also from the phenomena of arcing. There is an issue of fact as to whether Cordova made direct contact with the power line or not. These issues preclude the Court from granting Town & Country's Motion for Summary Judgment.

In addition, there is the undisputed fact that Perigo went to the jobsite where the men intended to use the Lift as a result of the inability of the men to get the Lift to operate. There is a question of fact whether Perigo knew that the men intended to use the lift to power wash the building because while at the jobsite there was a discussion and suggestion that the men needed a more powerful power washer, which the men proceeded to rent from Town & Country. If Perigo knew that the men intended to set up the Lift between the building and the power lines in order to power wash the upper story of the building then an issue arises whether Perigo complied with the Section 388 duty to "inform [the men] of the dangerous condition or of the facts which make [the Lift] likely to be dangerous." The Court finds that Town & Country has failed to carry its burden of showing that the undisputed material facts demonstrate that Town & Country is entitled to summary judgment as a matter of law. Accordingly, Town & Country's Motion for Summary Judgment should be denied.

Appellant's App. Vol. II pp. 24-25. The trial court certified the decision for interlocutory appeal pursuant to Indiana Appellate Rule 14, and this court accepted the appeal.

## Analysis

[17] Town & Country appeals the trial court's denial of its motion for summary judgment. Summary judgment is appropriate only when the moving party shows there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Estate of Harris by Harris*, 99 N.E.3d 625, 629 (Ind. 2018), *reh'g denied*; *see also* Ind. Trial Rule 56(C). Once that showing is made, the burden shifts to the nonmoving party to designate appropriate evidence to demonstrate

the actual existence of a genuine issue of material fact. *Schoettmer v. Wright*, 992 N.E.2d 702, 705-06 (Ind. 2013). When ruling on the motion, the trial court construes all evidence and resolves all doubts in favor of the non-moving party. *Id.* at 706. We review the trial court's ruling on a motion for summary judgment de novo, and we take "care to ensure that no party is denied his day in court." *Id.* "We limit our review to the materials designated at the trial level." *Gunderson v. State, Indiana Dep't of Nat. Res.*, 90 N.E.3d 1171, 1175 (Ind. 2018).

[18] Cordova brought a negligence action against Town & Country. "To prevail on a claim of negligence, a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach." *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007). Town & Country argues that the trial court should have granted its motion for summary judgment because Town & Country had no duty to Cordova.

[19] According to Town & Country, the aerial lift's manufacturer's warnings were sufficient, and it was not required to provide additional warnings to Cordova. Cordova argues that the warnings were provided in English and that his English is limited; Cordova also contends that Town & Country had a duty because Perigo allegedly was aware of where Cordova was using the aerial lift. "[W]hether a duty exists is a question of law for the court to decide." *Rogers v. Martin*, 63 N.E.3d 316, 321 (Ind. 2016). "Although the adequacy of warnings, which implicates breach of duty, is generally a question of fact for the trier of

fact to resolve, the nature of the duty to provide warnings is a question of law to be decided by the court." *Rushford*, 868 N.E.2d at 810.

[20] Although neither party cites the Indiana Product Liability Act, we note that the Act "governs all actions that are: (1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product; regardless of the substantive legal theory or theories upon which the action is brought." Ind. Code § 34-20-1-1. Under the Act, "[a] product is defective under this article if the seller fails to . . . properly package or label the product to give reasonable warnings of danger about the product . . . when the seller, by exercising reasonable diligence, could have made such warnings or instructions available to the user or consumer." I.C. § 34-20-4-2.

[21] Town & Country argues that *Rushford* is controlling here. In *Rushford*, the plaintiff and her husband purchased a car from a Ford dealer. A few weeks later, the plaintiff, who was a passenger in the vehicle, was injured by the air bag during a crash. The plaintiff brought a product liability action against the dealer and the manufacturer and alleged that they failed to provide reasonable, adequate warnings regarding the air bags. According to the plaintiff, the dealer should have given her additional warnings because it was aware she did not drive and saw her short stature. The trial court denied the dealer's and manufacturer's motions for summary judgment. On appeal, this court reversed the denial of the manufacturer's motion for summary judgment but affirmed the denial of the dealer's motion for summary judgment.

Our supreme court then considered the denial of the dealer's motion for summary judgment. Although this court had analyzed the issue in the context of breach of duty, our supreme court considered the issue of whether a duty existed at all:

> Rather than focusing upon the breach of a preexisting duty, we see this case as presenting the question of whether a duty existed in the first instance. That is to say, what duty to warn of dangers does a retail seller owe to a user or consumer of a product when such dangers already have been communicated by the product's manufacturer. Stated somewhat differently, once the manufacturer has warned a user or consumer of a particular danger, what duty do we impose on the retail seller to give additional warnings of the same danger.

*Rushford*, 868 N.E.2d at 810-11. The court concluded:

> We acknowledge that the seller of a product that, to its knowledge, involves danger to users has a duty to give a warning of such danger at the time of sale and delivery. *See Natural Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155, 162 (Ind. Ct. App. 1997) ("[T]he manufacturer, seller or distributor of a product has a duty to warn those persons it should reasonably foresee would be likely to use its product or who are likely to come into contact with the danger inherent in the product's use.") (citing 63A Am.Jur.2d *Products Liability* § 1188 (1997)). But in the absence of any evidence that the product has been modified in some fashion and that the seller knew or should have known of any such modification, its duty to warn is discharged where the seller provides the buyer with the manufacturer's warning of the danger at issue. In other words *absent special circumstances, if the manufacturer provides adequate warnings of the danger of its product and the seller passes this warning along to the buyer or consumer, then the seller has no obligation to provide additional warnings.*

*Id.* at 811 (emphasis added). The court emphasized: "'Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.'" *Id.* (quoting *Dias v. Daisy-Heddon*, 180 Ind. App. 657, 662, 390 N.E.2d 222, 225 (1979)).

[23] The court in *Rushford* noted that the air bag warnings in the owner's manual were adequate, the owner's manual was provided to the plaintiff, and there was no claim of a modification. The court, thus, concluded that, "having provided Rushford with the manufacturer's warning, [the dealer] was under no duty to give Rushford additional warnings, including advising Rushford to read the manufacturer's warnings based on [the dealer's] knowledge of 'Rushford's peculiar characteristic.'" *Id.* "To conclude otherwise would place retail sellers . . . in the position of attempting to determine which particular manufacturer warnings may be of unique importance to an individual consumer and then direct the consumer's attention to those warnings." *Id.* at 811-12. The court concluded that requiring sellers to give additional warnings would be "an untenable position and an unnecessary burden" and, thus, reversed the denial of the dealer's motion for summary judgment. *Id.* at 812.

[24] Town & Country argues that, based on *Rushford*, it had no obligation to give Cordova warnings in addition to the warnings provided by the manufacturer. Town & Country also contends that Cordova's limited grasp of the English language is a unique characteristic analogous to the plaintiff's short stature in *Rushford*, which did not require additional warnings. Cordova, however, argues

that Town & Country's argument would favor English speakers and non-English speakers would not be "entitled to receive critical safety information and/or warnings in a form that they can understand." Appellee's Br. p. 19.

[25] Additionally, Cordova argues that Town & Country had actual knowledge and notice that Cordova was not following the manufacturer's warnings. Cordova argues that *Dutchmen Manufacturing, Inc. v. Reynolds*, 849 N.E.2d 516 (Ind. 2006), is controlling. In *Dutchmen*, an employee of Keystone RV was injured when scaffolding broke loose and struck him. The scaffolding had been installed by Dutchmen, the prior lessee of the facility. The employee filed a complaint against Dutchmen and the landlord of the premises. The trial court granted in part and denied in part Dutchmen's motion for summary judgment, and this court reversed and ordered that Dutchmen's motion for summary judgment be granted in full.

[26] Our supreme court accepted transfer and considered the applicability of Section 388 of the Restatement (Second) of Torts, which provides:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> > (a)  knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b)     has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c)     fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Dutchmen*, 849 N.E.2d at 519.

[27]     The court noted:

> Section 388 imposes liability on a supplier of a chattel for physical harm caused by the supplier's "failure to exercise reasonable care" to provide to any expected user of the chattel any information as to the "character and condition of the chattel … which [the supplier] should recognize as necessary to enable [the user] to realize the danger of using it."  Restatement (Second) Torts § 388 cmt. b.  *A supplier of a chattel has no duty to warn of an obvious hazardous condition which a "mere casual looking over will disclose."  Id.* at cmt. k. . . .

*Id.* at 522 (emphasis added).  The court concluded that "[t]he evidence viewed in a light most favorable to [the employee] permits the inference that Dutchmen negligently welded the scaffolding, and also failed to conduct a reasonable inspection of the scaffolding and ensure adequate lubricant.  This is sufficient to deny summary judgment on the ground that Dutchmen had no knowledge of the defect."  *Id.* at 523.

[28]     In this case, warnings were given by the manufacturer and were clearly visible on the aerial lift.  Cordova cites no authority that Indiana law imposes a duty to

provide bilingual warnings on a product or that the "reasonable warning" requirement includes an obligation to provide bilingual warnings.[3]  Other courts considering this issue have analyzed whether the product was specifically marketed to non-English speakers, and there is no evidence of such here.  *See Farias v. Mr. Heater, Inc.*, 684 F.3d 1231 (11th Cir. 2012) (holding that the warnings on a heater were adequate even though they were not provided in Spanish where the product was not specifically marketed to Spanish-speaking customers).

[29]  We conclude that the *Rushford* analysis is more applicable and persuasive here.  Under *Rushford*, Town & Country had no duty to provide additional warnings to Cordova.  In *Rushford*, the seller had no obligation to provide additional warnings regarding the airbags even though it was aware of the plaintiff's short stature.  *Rushford*, 868 N.E.2d at 811.  Town & Country, similarly, had no obligation to provide Cordova with additional warnings regardless of Cordova's limited English skills.

[30]  Further, under *Rushford*, we do not believe that Perigo's visit to the jobsite changes the outcome here.  We acknowledge that the parties have differing accounts of whether Perigo witnessed the aerial lift's location between the

---

[3] Cordova also argues that Town & Country's argument "flies in the face of the principles" discussed in *Escamilla v. Shiel Sexton Company, Inc.*, 73 N.E.3d 663 (Ind. 2017).  Appellee's Br. p. 19.  *Escamilla* concerned an undocumented immigrant's access to the courts after he was injured while working and the admissibility of his immigration status at the trial.  We do not find *Escamilla* persuasive here.

restaurant's back wall and the power lines.[4] Even if Perigo did see the final location of the aerial lift, however, under *Rushford*, Town & Country was not required to provide additional warnings. Furthermore, both Cordova and Barcelata admitted during their depositions that they were aware of the dangers of the power lines.

[31] Moreover, even if *Dutchmen* is applicable here, Cordova's argument fails. Under *Dutchmen*, Section 388 of the Restatement (Second) of Torts requires a consideration of whether the seller "has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition." *Dutchmen*, 849 N.E.2d at 519. Here, the danger of using the aerial lift near power lines was well documented through the warnings, illustrations, and owner's manual, and Cordova was well aware of the obvious dangers of power lines. Town & Country had "no duty to warn of an obvious hazardous condition" which a "mere casual looking over" would disclose. *Id.* at 522. Given the manufacturer-provided warnings, Town & Country had reason to believe that Cordova would heed the multiple written and illustrated warnings and realize the danger of operating the aerial lift near power lines.

[32] Under either the *Dutchmen* or *Rushford* analysis, Town & Country prevails. The warnings were placed on the aerial lift and in the operating manual by the manufacturer, and Town & Country passed on these warnings to Cordova.

---

[4] Perigo did not witness Cordova actually using the power washer and aerial lift.

Having considered the written warnings and illustrations and our supreme court's opinions in *Rushford* and *Dutchmen*, we conclude that there is no genuine issue of material fact regarding whether the manufacturer-provided warnings and illustrations supplied adequate warnings of danger about the risks of electrocution when using the aerial lift. Town & Country had no duty to provide additional warnings to Cordova. Accordingly, Town & Country was entitled to judgment as a matter of law. The trial court erred by denying Town & Country's motion for summary judgment.[5]

## Conclusion

[33] The trial court erred by denying Town & Country's motion for summary judgment. We reverse and remand.

[34] Reversed and remanded.

Brown, J., and Altice, J., concur.

---

[5] Given our resolution of this issue, we need not address Town & Country's comparative fault argument.