

FILED

Sep 29 2023, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Sarah Graziano
Jennifer Risser
Eileen Archey
Hensley Legal Group, PC
Fishers, Indiana

ATTORNEY FOR APPELLEE
PEKIN INSURANCE COMPANY

Stephen C. Wheeler
Fisher Maas Howard Lloyd &
Wheeler, PC
Carmel, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Hesser, as the guardian of David Gonzalez, and David Gonzalez, <br><br> *Appellants-Plaintiffs*, <br><br> v. <br><br> John Abney and Pekin Insurance Company, <br><br> *Appellees-Defendants*. | September 29, 2023 <br><br> Court of Appeals Case No. 23A-CT-773 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Tim Oakes, Judge <br><br> Trial Court Cause No. 49D02-1912-CT-050217 |

**Opinion by Judge Brown**
Judges Crone and Felix concur.

**Brown, Judge.**

[1] Michael Hesser, as the guardian of David Gonzalez, and David Gonzalez ("Appellants") appeal the trial court's entry of summary judgment. We affirm.

*Facts and Procedural History*

[2] Dowell Masonry employed Gonzalez for work on a job site in Ladoga, Indiana. Gonzalez had worked there for at least a week when, on September 5, 2018, he was driving a Mazda Miata to the site and was involved in a motor vehicle collision with John Abney, an uninsured driver. Gonzalez was insured by an automobile policy issued by Geico Casualty Company which included uninsured motorist benefits.

[3] As of the date of the accident, Mike Dowell had an insurance policy (the "Pekin Policy") with Pekin Insurance Company ("Pekin"), which included a Declarations Page identifying the insured as "Dowell Masonry Mike Dowell DBA." Appellants' Appendix Volume II at 181. The Pekin Policy identified two "units" on the Declarations Page under "Vehicle Information," a "99 Ford F350 SD" and "10 Ford F150," and it listed serial numbers for both vehicles. *Id.* In the section titled "Coverages," the Declarations Page identified the declared vehicles by their unit numbers and listed limits of liability for each vehicle for uninsured and underinsured motorists claims. *Id.* The Pekin Policy further stated as follows:

> Part I – WORDS AND PHRASES WITH SPECIAL
> MEANING
>
> The following words and phrases have special meaning
> throughout this policy and appear in boldface type when used:

A. "You" and "your" mean the person or organization shown as the named insured in ITEM ONE of the declarations.

\* \* \* \* \*

D. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads but does not include mobile equipment.

\* \* \* \* \*

F. "Insured" means any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable insurance. Except with respect to our limit of liability, the insurance afforded applies separately to each insured who is seeking coverage or against whom a claim is made or suit is brought.

\* \* \* \* \*

PART II – WHICH AUTOS ARE COVERED AUTOS

A. ITEM TWO of the declarations shows the autos that are covered autos for each of your coverages.

B. OWNED AUTOS YOU ACQUIRE AFTER THE POLICY BEGINS.

1. An auto you acquire will be a covered auto for that coverage only if:

a. We already insure all autos that you own for that coverage or it replaces an auto you previously owned that had that coverage; and

b. You tell us within 30 days after you acquire it that you want us to insure it for that coverage.

*Id.* at 186 (some emphasis omitted).

[4] In the section titled "Endorsements Applicable to Units Indicated Below," it listed Endorsements modifying the policy and the units to which each Endorsement applied, including a ninety-four-dollar premium for "Comprehensive Auto Coverage," which was listed only next to "Units 001," and "Indiana Uninsured Motorists Coverage/UMPD 25,000/0," which applied to both units for a forty-two-dollar premium. *Id.* at 181-182. The Pekin Policy included an Endorsement titled "Comprehensive Auto Coverage," which provided:

> With respects [sic] to Part IV - Liability Insurance[,] Part V - Medical Payments Insurance and Part VI - Uninsured Motorists Insurance including Underinsured Motorist, the definition shown under part II, sections A and B, which autos are covered autos, is deleted and replaced by the following:
>
> A. Description of covered autos.
>
> Any auto.
>
> B. Owned autos you acquire after the policy begins.
>
> 1. You have coverage for autos that you acquire for the remainder of the policy period. Autos acquired during a policy period will be covered autos only if the auto is specifically described in the Declarations.

*Id.* at 196 (emphasis omitted).

[5] The Indiana Uninsured Motorists Coverage Endorsement modified the Pekin Policy beginning on April 29, 2015, with respect to uninsured motorist coverage, applied to units 001 and 002, and provided:

With respect to coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

This endorsement replaces PART VI – UNINSURED MOTORISTS INSURANCE (including Underinsured Motorist) effective on [4/29/15] . . . .

\* \* \* \* \*

A. Coverage

　　1. We will pay all sums the insured is legally entitled to recover as compensatory damages from the owner or driver of an uninsured motor vehicle.  The damage must result from:

　　　　a. Bodily injury sustained by the insured and caused by an accident, with an uninsured motor vehicle; or

　　　　b. Property damage caused by an accident with an uninsured motor vehicle if the Schedule or Declarations indicates that both bodily injury and property damage Uninsured Motorists Insurance apply.

　　The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the uninsured motor vehicle.

B. Who Is An Insured

　　If the Named Insured is designated in the Declarations as:

　　1. An individual, then the following are insureds:

　　　　a. The Named Insured and any family members.

b.  Anyone else occupying a covered auto or a temporary substitute for a covered auto.  The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.

c.  Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured.

2.  A partnership, limited liability company, corporation, or any other form of organization, then the following are insureds:

a.  Anyone occupying a covered auto or a temporary substitute for a covered auto.  The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.

b.  Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured.

c.  The Named Insured for property damage only.

*Id.* at 212-213 (some emphasis omitted).

[6]     On December 3, 2019, Hesser filed a complaint on behalf of Gonzalez against John Abney, Geico Casualty Company, and Pekin.[1]  On October 24, 2022, Pekin filed a motion for summary judgment arguing the Pekin Policy did not provide uninsured motorist coverage for Gonzalez.  On October 25, 2022,

---

[1] The complaint states Hesser was appointed guardian of Gonzalez because he "is currently medically incapacitated due to the injuries sustained in the collision at issue in this case," and Hesser will serve as guardian "until such time as his incapacity ends, if ever."  Appellants' Appendix Volume II at 24.

Appellants filed a motion for summary judgment, arguing the Pekin Policy provided uninsured motorist coverage for Gonzalez. The trial court granted Pekin's motion for summary judgment and denied Appellants' motion for summary judgment.

### Discussion

Appellants argue the Pekin Policy provided uninsured motorist coverage for Gonzalez because, "[b]ased on the plain language of the Pekin Policy, Gonzalez qualifies as an insured – at the time of the collision, he was 'anyone' occupying 'any auto.'" Appellants' Brief at 15. They argue that finding Gonzalez was not covered is contrary to Indiana law and public policy. Pekin asserts Gonzalez was not covered under the Pekin Policy and that public policy does not require Gonzalez to be covered.

We review an order for summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.* Our review of a summary judgment motion is limited to those materials designated to the trial

court. *Mangold ex rel. Mangold v. Ind. Dep't of Nat. Res.*, 756 N.E.2d 970, 973 (Ind. 2001). "Parties filing cross-motions for summary judgment neither alters this standard nor changes our analysis—we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Est. of Harris by Harris*, 99 N.E.3d 625, 629 (Ind. 2018), *reh'g denied*. Matters involving disputed insurance policy terms present legal questions and are particularly apt for summary judgment. *Id.*

[9] "Insurance policies are contracts 'subject to the same rules of judicial construction as other contracts.'" *Id.* at 630 (quoting *State Farm Mut. Auto. Ins. Co. v. Jakubowicz*, 56 N.E.3d 617, 619 (Ind. 2016)). When construing the language of an insurance policy, a court "should construe the language of an insurance policy so as not to render any words, phrases or terms ineffective or meaningless." *Id.* "'[F]ailure to define a term in an insurance policy does not necessarily make it ambiguous' and thus subject to judicial construction." *Id.* (quoting *Wagner v. Yates*, 912 N.E.2d 805, 810 (Ind. 2009)). Further, "failing to define a policy term merely means it has no exclusive special meaning, and the courts can interpret it." *Id.* "[P]arties to an insurance contract may not invite judicial construction by creating ambiguity." *Id.* They may not make a term ambiguous by simply offering different policy interpretations. *Id.* "Rather, insurance policy provisions are ambiguous only if they are 'susceptible to more than one reasonable interpretation.'" *Id.* (quoting *Holiday Hosp. Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 578 (Ind. 2013)).

[10]    "When evaluating alleged ambiguities—whether there exist two reasonable interpretations for one policy term—courts read insurance policies 'from the perspective of . . . ordinary policyholder[s] of average intelligence.'" *Id.* (quoting *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243, 246-247 (Ind. 2005)). "If reasonably intelligent policyholders would honestly disagree on the policy language's meaning, then we will find the term ambiguous and subject to judicial construction." *Id.* "Conversely, if reasonably intelligent policyholders could not legitimately disagree as to what the policy language means, we deem the term unambiguous and apply its plain ordinary meaning." *Id.* However, when a case involves a dispute between a third party and an insurer, we determine the general intent of the contract from a neutral stance. *Burkett v. Am. Fam. Ins. Grp.*, 737 N.E.2d 447, 452 (Ind. Ct. App. 2000) (citing *Ind. Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.*, 260 Ind. 32, 291 N.E.2d 897 (1973), and *Am. Fam. Mut. Ins. Co. v. Nat'l Ins. Ass'n*, 577 N.E.2d 969 (Ind. Ct. App. 1991).

[11]    The record reveals that the Indiana Uninsured Motorists Coverage Endorsement replaced Part VI of the Pekin Policy, and the Endorsement stated in part that an insured included "[a]nyone occupying a covered auto or a temporary substitute for a covered auto," and "[t]he covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction." Appellants' Appendix Volume II at 212-213 (emphasis omitted). There is no dispute that Gonzales occupied a Mazda when he was involved in the accident on September 5, 2018. Thus, we must determine whether the Mazda was a

"covered auto" under the Pekin Policy. The original terms of the Pekin Policy provided that a covered auto included those vehicles listed on the declarations page and certain autos acquired by the Named Insured after the start of the policy. The Comprehensive Auto Coverage Endorsement stated that a covered auto was "[a]ny auto" and "[a]utos acquired during a policy period . . . only if the auto is specifically described in the Declarations." *Id.* at 196.

[12] We observe that an interpretation finding that "any auto" refers to any vehicle, even if the vehicle was not listed on the declarations page, owned or acquired by the named insured, or a temporary substitute for such a vehicle, would result in an absurd outcome and render other portions of the Pekin Policy meaningless. In particular, it would render superfluous Section B of the Comprehensive Auto Coverage Endorsement, which states that "[y]ou have coverage for autos that you acquire for the remainder of the policy period" and "[a]utos acquired during a policy period will be covered autos only if the auto is specifically described in the Declarations," as well as the language of the Indiana Uninsured Motorists Coverage Endorsement providing that an insured includes "[a]nyone else occupying a covered auto or a temporary substitute for a covered auto" and "[t]he covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction." *Id.* at 196, 212. *See Jakubowicz*, 56 N.E.3d at 619 (we should construe an insurance policy "so as not to render any words, phrases or terms ineffective or meaningless"). We need not determine whether the reference to "any auto" in Section A of the Comprehensive Auto Coverage Endorsement was intended to refer to any auto

listed on the Declarations page, any auto owned or acquired by Dowell or Dowell Masonry, or a temporary substitute because there is no question that the Mazda in which Gonzales was traveling did not constitute a covered auto under any of these possible definitions. We conclude that Gonzales was not operating a covered auto at the time of the accident. *See Carrier v. Reliance Ins. Co.*, 759 So.2d 37, 44 (La. 2000) ("It simply is not reasonable to ascribe to the contracting parties an intention to provide [uninsured motorist] insurance worldwide to any person occupying any auto. Although it would be reasonable . . . to limit UM coverage to employees driving their own vehicles in the scope of employment, the literal language . . . does not do so and therefore leads to unreasonable and even absurd consequences."). Accordingly, we affirm the entry of summary judgment in favor of Pekin.

[13] With respect to Appellants' assertion that public policy and Ind. Code § 27-7-5-2 require that Gonzalez be covered by uninsured motorists' insurance in the Pekin Policy, we note that "language in an insurance policy which limits or diminishes the protection required by the uninsured motorist statute is contrary to public policy only if it specifically limits uninsured motorist protection as to [a] person who would otherwise qualify as insured for liability purposes." *Progressive Paloverde Ins. v. Arnold*, 16 N.E.3d 993, 997 (Ind. Ct. App. 2014) (quoting *Jackson v. Jones*, 804 N.E.2d 155, 161 (Ind. Ct. App. 2004)). Ind. Code § 27-7-5-2 provides in part that the insurer must make available in the liability policy of insurance "for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured

or underinsured motor vehicles because of bodily injury . . . ." Gonzalez did not qualify as an insured because he was not operating a covered auto and therefore was not entitled to uninsured motorist protection according to the Pekin Policy. We cannot say that the Pekin Policy limits the protection required by Ind. Code § 27-7-5-2 or that it violates public policy.

[14] For the foregoing reasons, we affirm the trial court's ruling.

[15] Affirmed.

Crone, J., and Felix, J., concur.